May Term, 1859.

BOOE
v.
CALDWELL.

*Per Curiam.*—The judgment is affirmed with 5 per cent. damages and costs.

*W. G. Cooper*, for the appellants.

*J. Baker*, for the appellee.

(1) The next preceding case.

---

## BOOE *v.* CALDWELL and Another.

Where *A.* and *B.* held themselves out as partners in a certain business, and *C.* contracted with *A.* to sell and deliver an article within the scope of that business, understanding that he was dealing with the firm; *held*, that *A.* and *B.* were both liable on the contract, though they might not, in fact, have been in partnership, and though *A.* did not intend, in making the contract, to pledge the credit of the firm, but only his own individual credit.

It must affirmatively appear, in such case, that the sale was made on the individual credit of the party purchasing, and on his own account.

Monday, May 23.

APPEAL from the *Fayette* Circuit Court.

Action by the appellant against *Caldwell* and *Watson*, to recover the value of one hundred and forty-eight bushels of wheat alleged to have been sold and delivered by the plaintiff to the defendants, as partners. Process not being served on *Watson*, the cause was continued as to him, for service, and *Caldwell* answered—

1. By general denial.

2. That although he and *Watson* were partners in trade at the time specified, the wheat was not purchased by the firm, but that it was sold and delivered by the plaintiff to *Watson*, on his own account and for his own use, and not for that of the firm of *Watson* and *Caldwell*.

Replication in denial of the matter set up in the answer.

Trial by jury; verdict and judgment for defendant, over a motion for a new trial.

It appears by a bill of exceptions, that on the trial of the

cause, it was agreed between the parties that, at the time of the sale and delivery of the wheat, the relation between *Caldwell* and *Watson* and the public was such, that *Watson* had power and authority to purchase on the credit of *Caldwell* and *Watson*, and that if the wheat was so purchased, *Caldwell* was liable to the plaintiff in this suit for the price of it. By agreement, the plaintiff and defendant were both to be received as competent witnesses, their credibility to be left to the jury.

May Term,
1859.

BOOE
v.
CALDWELL.

Plaintiff testified to the sale and delivery of the wheat. He made the contract of sale with *Watson*. Did not remember whether *Watson* said he was buying it for himself or for *Caldwell* and himself; but it was his understanding that he was selling it to both, and on their joint credit.

After making the contract for the sale of the wheat, he took a load to *Harrisburg*, and went into the store of *Caldwell* and *Watson*, and told *Caldwell* he had brought them a load of wheat. *Caldwell* was busy waiting on his customers, and told plaintiff that he could not attend to receiving it, but perhaps Mr. *Watt*, across the way, would attend to it. Plaintiff went to see Mr. *Watt*, but could not find him or any one else to receive the wheat; so he hauled it back, a distance of about one hundred and fifty rods. The wheat, it appears, was afterwards delivered. This was in the fall of 1856. The plaintiff gave in evidence the following card, published on the first day of *August* of that year, in a newspaper of general circulation in the county, viz.:

"Wheat! Wheat! *Watson* and *Caldwell, Harrisburg, Ind.*, are prepared to purchase, and will pay the very highest price in cash for, all the good wheat in eastern *Indiana*. We are purchasing for a *Cincinnati* firm, and are anxious to buy. We want the wheat delivered either at *Connersville, Harrisburg, Milton*, or *Cambridge. July* 30, 1856."

*Caldwell* was sworn, and testified that he had no interest in any of the wheat purchased by *Watson* in the fall of 1856—had no interest in that purchased of the plaintiff— was in partnership with *Watson* in the store, but had no interest in the purchases of grain. When the plaintiff

came to the store and said he brought the load of wheat (as testified to by plaintiff), defendant informed plaintiff that he, defendant, "had nothing to do with the wheat." *Booe* then asked him if *Watson* did not have some one to attend to it for him. Defendant told him he had a Mr. *Thomas* engaged in that service, but he was absent, and that perhaps Mr. *Watt*, over the way, would attend to it. *Booe* heard what defendant said when he told him he had nothing to do with the wheat, and asked if *Watson* did not have some one to attend to it for him. The defendant proved by a witness, that in *September* or *October*, 1856, at *Harrisburg*, in a conversation between plaintiff and *Watson*, the plaintiff told *Watson* that he had brought a load of wheat to *Harrisburg*, and that there was no one to receive it; that he had called on *Caldwell* to receive it, and he would not do it. *Watson* asked plaintiff why *Caldwell* would not attend to the receiving of the wheat, and he replied that he was engaged in the store. *Watson* observed that *Caldwell* might have received it; that he had done as much for him; that he (*Caldwell*) had no interest in the wheat. *Watson* told plaintiff to bring on his wheat, that he wanted it and would pay the *Connersville* price for it.

The defendant introduced other testimony tending to show that he was not, in point of fact, interested in the business of purchasing wheat.

The plaintiff was again introduced, and testified that at times he was hard of hearing, and that if ever *Watson* or *Caldwell* told him that *Caldwell* had nothing to do with the wheat, he did not hear it, but, on the contrary, it was his understanding that he sold it to both defendants.

This is the substance of all the evidence in the cause.

The Court instructed the jury "that to entitle the plaintiff to recover, it was not only necessary that he should have understood that he was selling the wheat to both defendants, but such must have been the mutual understanding of both of the contracting parties. The plaintiff must have understood that he was selling his wheat to both of the defendants, and *Watson*, with whom the contract appears to have been made, must also have understood

that he was pledging the credit of them both for the pay-
ment."

Thereupon the plaintiff requested the Court to charge
that, "in the absence of any direct evidence as to whether
*Watson* intended to buy the wheat on his own individual
account and credit, or on the account and credit of *Watson*
and *Caldwell*, it ought to be presumed that he purchased
it on the account and credit of them both." This the
Court refused, but charged " that it was for the jury to say,
from all the evidence in the case, whether *Watson* intended
to pledge his own individual credit, or the credit of both of
the defendants."

To the charges given, and the refusal to charge as asked,
the plaintiff excepted.

From the evidence offered, and the agreement of the
parties, it is apparent that *Caldwell* was at least a nominal
partner with *Watson* in the business of purchasing wheat.
They were partners "in the store," and held themselves out
as such in the business of purchasing wheat, by their ad-
vertisement, printed and circulated under such circum-
stances as to give general publicity to the same. Indeed,
the agreement of the parties, that the relations of *Watson*
and *Caldwell* were such that, as between themselves and
the world, *Watson* had power to purchase on the credit of
*Watson* and *Caldwell*, assumes that in that respect they
were at least nominally in partnership.

Admitting that *Caldwell* had no interest in the purchases
of wheat, and that, as between himself and *Watson*, they
were not, in fact, in partnership, yet *Caldwell* having al-
lowed his name to be held out to the world as that of a
partner, the law imposes upon him the liability of one, to
persons who have had dealings with the firm of which he
has held himself out as a member. *Waugh* v. *Carver*, 1
Smith's Lead. Cases, 717, and note. "If he will lend his
name as a partner, he becomes, as against all the rest of
the world, a partner, not upon the ground of the real trans-
action between them, but upon principles of general policy,
to prevent the frauds to which creditors would be liable, if
they were to suppose that they lent their money upon the

apparent credit of three or four persons, when, in fact, they lent it to two of them only, to whom, without the others, they would have lent nothing." Story on Part. 97.

The defendants, *Caldwell* and *Watson*, being nominally partners in the business of purchasing wheat, the question arises whether *Caldwell* is bound by such purchase, where the seller understands and supposes he is selling to the firm, although *Watson*, the member of the firm making the purchase, did not intend to pledge the credit of the firm, but only his own individual credit.

We think that, under such circumstances, both members of the firm are bound.

It is said by Chancellor KENT (3 Kent's Comm. 44), that "a sale to one partner in a case within the scope and course of the partnership business, is, in judgment of law, a sale to the partnership."

A very strong case illustrative of the above doctrine is that of *Bond* v. *Gibson and Jephson*, 1 Camp. 185. The case was assumpsit for goods sold and delivered.

It appeared that while the defendants were carrying on the trade of harness-makers together, *Jephson* bought of the plaintiff a great number of bits to be made up into bridles, which he carried away himself; but instead of taking them to the shop of himself and partner, he pawned them to raise money for his own use.

It was contended that this could not be considered a partnership debt, as the goods had not been bought on the partnership account, and the credit appeared to have been given to *Jephson* only.

But per Lord ELLENBOROUGH: " Unless the seller is guilty of collusion, a sale to one partner is a sale to the partnership, with whatever view the goods may be bought, and to whatever purpose they may be applied. I will take it that *Jephson* here meant to cheat his partner; still the seller is not on that account to suffer, and he had a right to suppose that this individual acted for the partnership."

Applying the law as thus expounded, to the case at bar, it follows that the Court erred in charging the jury that it was not only necessary that the plaintiff should have un-

derstood that he was selling to both defendants, in order to entitle him to recover, but such must have been the mutual understanding of both contracting parties; that *Watson* must have understood that he was pledging the credit of both for payment.

The rule, that a sale to one partner, in a case within the scope and course of the partnership, is, in judgment of law, a sale to the partnership, we think, applies where it does not affirmatively appear that the sale was made on the individual credit of the party purchasing, and on his own individual account, which does not appear to have been the case here. From the evidence it is entirely uncertain whether, in the contract for the sale of the wheat, there was anything said as to whether *Watson* was buying for himself individually, or for the firm; and in that state of uncertainty, the above rule, we think, is applicable.

As the jury might, on the evidence, have found differently, had they not been directed that in order to entitle the plaintiff to recover it was necessary that *Watson* should have understood that he was pledging the credit of the firm for the wheat, the judgment must be reversed.

By the charge given, the attention of the jury may have been withdrawn from what appears to have been the main question involved in the case; that is, whether the plaintiff had notice that *Caldwell* was not interested in, and had nothing to do with, the business of purchasing grain, before the sale or delivery of the wheat in question.

*Per Curiam.*— The judgment is reversed with costs, Cause remanded for a new trial.

*B. F. Claypool*, for the appellant (1).

*J. S. Reid* and *S. Heron*, for the appellees (2).

(1) Counsel for the appellant cited Story on Part., §§ 104, 105, 112, 134, 135, 140, 141; 1 Greenl. Ev., § 207; 2 McLean, 347; *Winship* v. *The United States Bank*, 5 Pet. 560.

(2) Counsel for the appellees cited Story on Part., §§ 137, 138, 154; *Port* v. *Williams*, 6 Ind. R. 219.