## JACKSON *v.* TODD ET AL.

PARTNERSHIP.—*Power of Partner.—Contract.—Evidence.—Leading Question.* —Action against the several members of a copartnership, engaged in buying and selling personal property *on their own account,* to recover for the value of property delivered by the plaintiff to, and sold by, one of the defendants, with the knowledge of the others, under a contract made by such defendant, on behalf of such copartnership, with the plaintiff, that such property should be delivered to the defendants to be sold *on commission.* Such other defendants, claiming that such contract and sale had been made solely on the individual account of such defendant, who had since absconded, placed one of their number on the stand as a witness, on the trial of such cause, and asked him to "state what the fact is, about yourself at any time authorizing the plaintiff, either by word or act, to deliver" such property to such absconding partner, "for shipment, on commission or for pay, and to charge either" the copartnership, or the witness individually, therefor.

*Held,* that such question is leading, as suggesting the answer desired, and that the evidence sought to be elicited thereby is incompetent.

SAME.—*Contract outside Ordinary Business.*—The fact that selling on commission was no part of such copartnership business does not relieve the defendants of liability on such contract with the plaintiff, if he had no knowledge of such fact.

SAME.—*Liability of Partnership for Acts of Partner.*—The evidence in such action showed that the plaintiff's property had been mingled with like property of the copartnership, and sold by such absconding partner on account of the copartnership, and payment therefor made to him as a partner.

*Held,* that the copartners are liable to the plaintiff.

From the Wabash Circuit Court.

*J. D. Conner,* for appellant.

*W. G. Sayre* and *T. T. Weir,* for appellees.

HOWK, J.—This was an action by the appellant, as plaintiff, against the appellees, as defendants, in the court below.

Appellant's complaint was in four paragraphs. In the first paragraph, appellant averred, in substance, that on or about the 11th day of November, 1873, the appellees were general partners, trading and doing business under the firm name of Todd & Wright, at the town of Lagro, in Wabash County, Indiana, and had been so trading and doing business, as such partners, for the five years before that time; that, as such partners, the appellees were and had been engaged, among other things, in the business of buying and selling hogs, and of shipping and selling hogs for other parties; that, on said day, at said county, in consideration that appellant, at appellees' request, would deliver to appellees the appellant's fat hogs, of the value of eight hundred dollars, to be shipped and sold by the appellees, for the appellant, for a reasonable reward to appellees, they, the appellees, undertook and promised the appellant to endeavor to sell the appellant's hogs, and to account to the appellant for the moneys arising from such sale, deducting therefrom the proper charges and expenses for shipping said hogs and getting them into market, and the appellees' reasonable reward for their trouble and services in that behalf, upon the appellant's reasonable request; that, relying upon the appellees' undertaking and promise, the appellant, on said day, delivered his said hogs, of the aggregate weight of seventeen thousand three hundred and eighty pounds, to the appellees, as such partners, for the purposes aforesaid, and the appellees afterward, on November 14th, 1873, sold said hogs, for the appellant, for, to wit, eight hundred dollars; and that, although the appellant, on December 1st, 1873, had requested an accounting, the appellees had failed to account to appellant for the proceeds of the sale of his said hogs, or any part thereof. Wherefore judgment was demanded, etc.

The second paragraph of the complaint was a common count for so much money had and received by the appellees, without any averment of their copartnership, for the appellant's use.

The third paragraph of said complaint was for so much money had and received by the appellees, as copartners, for appellant's use.

And the fourth paragraph of the complaint was a reiteration of the facts stated in the first paragraph of the complaint, in different phraseology, and with some additional averments, which we need not notice.

The appellee George W. Wright, who had disappeared, and had been served with process in the action by copy left at his last and usual residence, made default; but each of the other appellees appeared, and the issues joined were tried by a jury, in the court below, and a verdict was returned for said appellees.

Upon written causes filed, appellant moved the court below for a new trial, which motion was overruled, and to this decision the appellant excepted, and judgment was rendered upon the verdict, from which this appeal is here prosecuted.

In this court, the appellant has assigned many alleged errors, only one of which, however, as here presented, is available to the appellant, for any purpose: and that is, as we construe it, that the court below erred in overruling appellant's motion for a new trial. In his motion for such new trial, the appellant assigned several different causes therefor; but of these we will consider and decide upon only such as the appellant has discussed in his argument of this cause, in this court.

Before considering the questions presented and discussed by appellant's counsel in this court, we think it necessary to a proper understanding of the points decided, that we should first give a brief statement of the matters in controversy between the parties, as we gather the same from the record of this cause.

On, and for some years before, November 11th, 1873, the appellees had been partners in business at the town of Lagro, one branch of their business being the buying of fat hogs, and shipping them to a market.   The appellees Todd and George W. Wright were the ostensible members of the firm, and the appellee Harvey Wright was a silent partner, not known as such to the appellant until after the commencement of this action.   For some days before November 11th, 1875, in that month, appellant had endeavored to sell his fat hogs, which he had on hand, to the firm of Todd & Wright, but he was unwilling to sell for the price they offered.   Finally, George W. Wright, with whom alone appellant appears to have conversed on the subject of his hogs, or the sale or shipment thereof, told him, that they, Todd & Wright, could ship his hogs, that they had a good lot on hands, and that his lot would make about two car-loads.

The appellant thus states the contract he made with George W. Wright, in his testimony on the trial:

"We went on with the contract; he was to ship my hogs, and pay me the amount of money the hogs brought, deducting the expense; we did not agree on any certain price, but I was to pay whatever it was worth for the trouble—for shipping."

This contract was made on the 8th day of November, 1875, and on the 11th day of the same month the appellant delivered his hogs, for shipment to Buffalo, New York, at Lagro, with the knowledge of appellee John Todd, who was present at the time of such delivery.   The hogs were shipped with those of the appellees, on the same day of their delivery at Lagro, by railroad cars, to Buffalo, New York; George W. Wright went with the hogs to Buffalo, and there sold them, and, after receiving the proceeds of such sale, he absconded with the money, and had never accounted for or paid any part of said money either to his copartners or to the appellant.

The foregoing facts are those which may be regarded as

the undisputed facts of this case, as we gather them from the record, and chiefly from the appellant's own testimony. It will readily be seen, from this statement of facts, what the questions were which were involved in the trial of this cause. Appellant claimed, that, in dealing with said George W. Wright for the shipment of his hogs to market, he was dealing with him, not as an individual, but as a member of the firm of Todd & Wright, and in reference to a matter within the scope of the copartnership business of said firm. On the contrary, the appellees John Todd and Harvey Wright claimed, that the shipment of hogs belonging to other parties was never any part of the business of said firm; that they had nothing whatever to do with, and had no interest in, the shipment of appellant's hogs, and that the appellant's shipment of his hogs was merely a private venture of the said George W. Wright, under an agreement between him and the appellant.

With the foregoing statement of the case, and of the questions at issue between the parties, we come now to the consideration of the points made in argument by appellant's counsel. And we shall notice these points in what we conceive to be their natural order, rather than in the order which counsel has presented them. Appellee John Todd was a witness on the trial, and, while testifying, his counsel propounded to him this question:

" You may state what the fact is about yourself at any time authorizing the plaintiff Jackson, either by word or act, to deliver his hogs to George W. Wright, for shipment, on commission or for pay, and to charge either Todd & Wright, or yourself individually, with the same."

This question was objected to by appellant, manifestly upon the ground that it was leading and allowed the party and witness to give his own construction to, and state his own conclusions from, his own words and acts; but the objection was overruled by the court below, and

the appellant excepted, and the witness answered: "I never did."

We are very clearly of the opinion, that the court below erred in this decision. The question was, in form, so suggestive of the desired answer, that it almost amounted to an express request that the appellee Todd would tell the jury that he had never authorized the appellant, either by word or act, to deliver his hogs to George W. Wright, for shipment by Todd & Wright. And, besides, the evidence sought for by the answer to this question was clearly incompetent. In answer to proper questions, the appellee Todd might perhaps have given the jury his words and acts in connection with the shipment of appellant's hogs; but it is very clear, we think, that his construction of, or conclusions from, those words and acts, were not competent evidence.

The first cause for a new trial, assigned by the appellant in his motion therefor, was, that "the verdict was clearly against the great preponderance of the evidence." The appellees and George W. Wright were undoubtedly copartners in the business of buying and selling hogs, and in the shipment of hogs purchased by them to other markets, for sale. In the management of their copartnership business, said George W. Wright was the active member of the firm. The appellee Todd testified, that "George assisted in buying and shipping, and he kept the books; I think that George had no separate business, not connected with the firm." The evidence, in our opinion, shows very clearly that the appellant, in contracting with said George W. Wright for the shipment of his hogs, thought that he was dealing with the firm of Todd & Wright. When the contract was made, the said George W. Wright said to the appellant: "We will ship your hogs, when we ship ours, to a good firm. We have a good lot of hogs, and, by getting yours, we will have two carloads." When the appellant afterward delivered his hogs at Lagro for the purpose of shipment to Buffalo, the

appellee John Todd was present, and helped to drive the hogs in the pen, and told the appellant, that "George would weigh the hogs." When the hogs were put in the cars for shipment, they were put in the same cars with, and not kept separate from, the hogs owned by said firm; and at Buffalo the appellant's hogs and the hogs of said firm were all sold together by the car-load, on account of the firm of Todd & Wright, and the proceeds of such sale were paid over to said George W. Wright, as a member of said firm.

It seems to us, that, under the facts established by the evidence in this case, the transaction between the appellant and said George W. Wright, in relation to appellant's hogs, was fairly within the scope of the business of the copartnership between said Wright and the appellees. That business extended to, and embraced within its scope, as stated under oath by appellee Todd, the "buying and shipping" of hogs. The appellees attempt to escape liability for the appellant's hogs, upon the ground that the shipment of hogs belonging to other parties, for commission or pay, was not a part of the copartnership business. On this point, the appellee Todd testified: "We did not ship hogs, or any thing else, on commission. I always objected to it." It did not appear in evidence, however, that the appellant had any notice or knowledge of this reservation in the business of the firm. It is manifest, we think, from the entire record of this cause, that the appellees were fully cognizant of the agreement between their partner George W. Wright and the appellant, in regard to the latter's hogs. By forming their copartnership with said Wright, the appellees declared to the world that they were satisfied with his good faith and integrity, and impliedly undertook to be responsible for what he should do within the general scope of the business of said copartnership. It can not be doubted that the appellant was induced by and through the said copartnership to make the said agreement for the shipment of his hogs.

Nor can it be doubted, that, when appellant's hogs had been sold on account of said firm of Todd & Wright, the proceeds of such sale were paid over to said George W. Wright, not as an individual, but solely as a member of said firm. It may be, and doubtless was, true, that the appellees had not the slightest connection with or participation in the fraud practised by said George W. Wright, in this transaction; but, as they were the cause or occasion of the confidence and credit reposed in said Wright, the firm must be bound for his frauds. This doctrine is laid down by Mr. Justice STORY, and he says that it proceeds upon the intelligible ground that, where one of two innocent persons must suffer by the act of a third person, he shall suffer who has been the cause or occasion of the confidence and credit reposed in such third person. Story Part., sec. 104 *et seq.; Booe* v. *Caldwell,* 12 Ind. 12. It seems to us, that this doctrine is applicable to the case made by the evidence in the record of this action. And therefore we hold, that the verdict in this cause was not sustained by sufficient evidence, and was contrary to law.

Other causes for a new trial were assigned by appellant, founded upon alleged errors of law occurring at the trial, and excepted to; but as these errors may not occur again on a new trial of this cause, we need not now consider them.

In our opinion, the court below erred in overruling the appellant's motion for a new trial.

The judgment of the court below is reversed, at the appellees' costs, and the cause is remanded, with instructions to sustain the appellant's motion for a new trial, and for further proceedings.