No. 12,611

PORTER v. WILSON ET AL.

PARTNERSHIP.—*Apparent Scope of Business.*—*Sale to One Partner.*—*Liability of Firm.*—Where two persons engage· as partners in a particular business, every transaction by either partner within the apparent scope of the business will be presumed to be on the partnership account, and a sale to one partner is a sale to both, unless it affirmatively appears that the transaction was known by the seller to be upon the individual account and credit of the partner who negotiated the purchase.

From the Daviess Circuit Court.

*J. M. Barr,* for appellant.

*J. H. O'Neall,* for appellees.

MITCHELL, C. J.—Porter sued Wilson & Murray to recover a balance due on account for cattle alleged to have been sold and delivered by the former to the latter.

There was a verdict and judgment against Murray and in favor of Wilson.

The controversy from the beginning was wholly between Porter and Wilson. The question arises upon the evidence, in which we find no material contradiction.

It is conceded by both Wilson and Murray that they were partners on the 27th day of October, 1884, engaged in purchasing cattle be fed on what is called the " Hornaday farm," in Daviess county. Both testify that the business of the firm did not extend beyond the purchase of cattle to be fed on the farm above mentioned. The evidence does not show when the copartnership was formed. Murray usually purchased the cattle, Wilson furnishing the money to pay for them.

There was evidence tending to show that Murray had been engaged in various ways in the business of purchasing cattle prior to his association with Wilson. Some days prior to that on which the cattle in controversy were purchased, Wilson and Murray went to Porter's house or farm together

to look at his cattle. Murray, in the presence of Porter and Wilson, spoke of buying fat cattle, and started to look at some belonging to Porter, whereupon Wilson remarked that he would not go to look at them, as he did not want to purchase cattle of that kind, at the same time saying to Porter that he and Murray might go and look at the cattle; that he (Wilson) did not want them. Murray looked at the cattle, but none were purchased on that day. On the 27th of October, Murray returned and purchased all the cattle, twenty-four in number, from Porter. The aggregate price was $980. Nothing was said as to whom the purchase was made for. The whole lot was negotiated and sold at the same time and as one transaction. Porter believed that he was dealing with Wilson & Murray. Of the lot purchased, there were ten head of feeding cattle, which were taken at the agreed price of $4\frac{1}{2}$ cents per pound. The price of these aggregated $500. This amount was paid down, but nothing was said as to its application or that it was for any specified number of the cattle. This money was furnished by Wilson, and the ten head of cattle were driven to the Hornaday farm. The fourteen head were taken away first, and were shipped off and sold by Murray on his own account. There remains due to Porter on the general account a balance amounting to $130.

As between Wilson and Murray, both concede that the former had nothing to do with the purchase of the fourteen head, and that the amount due Porter is due from Murray alone.

There were no circumstances, except as they grew out of the facts above stated, which tended in any manner to show knowledge by Porter of any limitation upon the partnership business of Wilson & Murray, or that the firm business was confined exclusively to the purchase of feeding cattle, to be fed on the Hornaday farm.

As has been seen, there is nowhere any dispute but that Wilson and Murray were partners, engaged in the business of buying cattle at the time of the transaction with Porter.

That transaction was, therefore, within the general scope of the firm business. True, the joint business of the firm was confined to the purchase of cattle for a specified purpose, while Murray, one of the partners, assumed to purchase cattle on his own account for another purpose. But this was not known to Porter.

In case two persons engage as partners in a particular trade or business, the rule is that every transaction by either partner, within the apparent scope of the business in which the firm is engaged, will be presumed to be on the partnership account. A sale to one partner, in such a case, is, in contemplation of law, a sale to both, unless it affirmatively appears that the transaction in question was known by the seller to be upon the individual account and credit of the partner who negotiated the purchase. *Todd* v. *Jackson*, 75 Ind. 272; *Booe* y. *Caldwell*, 12 Ind. 12; *Dailey* v. *Coons*, 64 Ind. 545; *Jackson* v. *Todd*, 56 Ind. 406.

The only circumstance which could by any possibility tend to show that Porter had notice that the purchase of the fourteen head of cattle, which we assume were fat, was not a partnership transaction, was what occurred when Wilson and Murray visited Porter, some days prior to the negotiation and purchase by Murray, for the purpose of looking at the cattle. All that occurred then was, that Murray spoke of looking at some fat cattle belonging to Porter, with a view of purchasing them. Wilson remarked, in substance, that he did not want to purchase that kind of cattle, and that, if Porter and Murray wanted to look at them, he would wait until they returned. Nothing further appears to have been said or done about the purchase on that day. In a short time thereafter the whole lot was purchased by Murray, as one transaction. There is no pretence that Porter was notified in any manner that the firm of Wilson & Murray were only purchasing feeding cattle for the Hornaday farm, or that the partnership business was limited to the purchase of cattle of any particular description. It is true, Wilson

testified that he said in the presence of Porter, when reference was made to the fat cattle, that he did not buy cattle of that kind. This was at most but an ambiguous expression. It may well have been understood by Porter to mean that the purchase of fat cattle was left to the judgment of Murray. It was certainly not equivalent to a notice that the firm of Wilson & Murray were not engaged in the purchase of cattle of that description on partnership account. No such inference could reasonably have been drawn from the statement. The purchase of the cattle was one entire transaction. It was within the general scope of the partnership business. Wilson having adopted part of an entire transaction, we are unable to discover any evidence in the record which justified the jury in finding that he might repudiate that part which did not meet his approbation.

The motion for a new trial should have been sustained.

Judgment reversed.

