WILKERSON ET AL. v. WOOD ET AL.

[No. 11,841. Filed March 20, 1924.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Industrial Board.—Weighing Evidence.*—It is the exclusive province of the Industrial Board, in hearings before it, to weigh conflicting evidence and to draw all reasonable inferences from the evidence. p. 251.

2. PARTNERSHIP.—*Existence.—Evidence.*—In a proceeding before the Industrial Board by a professional baseball player for compensation for injuries received in playing ball, evidence *held* insufficient to establish a partnership between the owners of the club employing claimant and private citizens who were interested in retaining said ball club in their home city, and who had undertaken to raise funds for that purpose. p. 252.

3. PARTNERSHIP.—*Estoppel to Deny.—Inference.*—In a proceeding by a professional baseball player for compensation for injuries received while playing ball, the action being against the owners of the team and certain "boosters" who had organized to raise funds to prevent the removal of the team to another town, evidence of articles published in the local newspapers purporting to give an account of the proceedings of said "boosters," from which an inference might be drawn that a partnership existed and that they were members thereof, was not sufficient to estop them from denying the partnership. p. 252.

4. ESTOPPEL.—*Elements Constituting.*—In order to estop a party from denying the truth, statements made by him, or by another by which he is bound, must be certain to every intent, and an inference from general statements is not a sufficient basis upon which to found an estoppel. p. 254.

5. ESTOPPEL.—*Elements.—Fraud or Deception.*—One who claims an estoppel must show that he acted upon the conduct of another to his injury, or that he will be injured if the other is

permitted to withdraw or deny the act, and one who has not parted with value, or who has not placed himself in a position where he will suffer loss, cannot set up another's act or declarations as the ground of an estoppel.   p. 254.

6.  ESTOPPEL.—*By Silence.*—To constitute an estoppel by silence, there must have been an imperative duty to speak and the party keeping silent must know that someone is relying thereon, and is either acting, or about to act, as he would not if the truth were known to him.   p. 256.

7.  PARTNERSHIP.—*Estoppel to Deny.*—In a proceeding before the Industrial Board by a professional baseball player for compensation for injuries received in playing ball, where citizens of the town who were interested in baseball had effected an organization to secure financial aid to the club to prevent its removal to another town, the claimant, having admitted that he had not changed his condition on the faith·that the members of such organization were his employers, could not assert that they were estopped to deny statements made in the local papers that indicated that they were his employers and that the organization constituted a partnership.   p. 256.

From the Industrial Board of Indiana.

Proceeding under the Workmen's Compensation Act by James E. Wood and others against L. A. Wilkerson and others. From an award for the claimant, the defendants appeal. *Reversed.*

*W. M. Alsop, W. M. McFarland, A. J. Padgett* and *Claude E. Gregg,* for appellant.

*W. A. Cullop,* for appellee.

ENLOE, J.—The following facts involved in this case appear without dispute, viz.:   On and prior to February 18, 1922, Joe Griggs, Walter McFarland and Ralph C. Phillippe were the owners—Griggs of the fee, and McFarland and Phillippe as lessees from Griggs—of an enclosed plot of ground in the city of Vincennes. The lessees had, prior to the date above mentioned, improved said plot by fencing the same and erecting a grand stand therein, and by making other improvements thereon.   They operated said park as an amusement resort, under the name and style of "Vincennes

Amusement Company", paying to said Griggs as rental for said ground one-third of the "gate receipts."

In February, 1922, Dustin Bullock, Walter M. Hoepner and Fred Kixmiller, who, as partners, were the owners and managers of the Vincennes Baseball Association, leased from said McFarland and Phillippe the grounds above mentioned as a place where games of baseball might be played during the season of 1922. By the terms of said lease, the said lessors were to have, as, or in lieu of, other rental for said grounds, the money received from sale of seats in the grand stand, from the sale of concessions, and from the sale of stall privileges; the general gate receipts were to be the property of said lessees.

Thereafter the said Bullock, acting as "manager of the club" proceeded to secure players and establish a club composed of professional baseball players at said city. About the first of May, 1922, the appellee Wood, a professional baseball player, came to Vincennes, as a member of said club, and was met at the depot by Bullock, by whom, as manager of said club, he had been employed, and at once thereafter entered upon the duties of his employment, as catcher for said Vincennes club.

On July 2, 1922, while performing his duties as such catcher, said Wood was in collision with a player on an opposing team and, as a result of such collision, both bones of his left leg were fractured between the knee and ankle. This is the injury for which he is asking, from the appellants herein and from appellee Cochran, compensation in this case. He was awarded compensation by the Industrial Board and this appeal followed. The appellants insist that the award is contrary to law because the same is not sustained by sufficient evidence. In his application for an award of compensation, said Wood named the appellants, L. A. Wilkerson, P. W.

Lenahan, Wm. M. Alsop, Henry Redel, Ralph Phillippe, I. C. Kerr, Frank Krueger, Earl Aliphant, Walter Mc-Farland, Bernie Cogan, Elmer Cummins, C. L. Lewis and Bert Fuller, and the appellee, James Cochran, as his employers, with an allegation that they were "partners doing business under the firm name and style of Vincennes Baseball Association."

So far as the status of the appellants in this case is material to be considered, it is in no wise different from the position they would have occupied had this been an action against them, at law, to recover wages alleged to be due and unpaid. The question simply is: Were they, as partners, the employers of said appellee at the time he received said injuries?

We are not unmindful of the rule that it is the exclusive province of the Industrial Board to weigh conflicting evidence, and to draw all reasonable 1. inferences from evidence, and we shall proceed to a consideration of the evidence in this case keeping these rules in mind.

It appears from the evidence, without dispute or controversy, that by reason of unfavorable weather, a number of games of baseball, that had been scheduled to be played at Vincennes in the early part of the baseball season of that year, had been canceled, and that about May 12, Bullock and Hoepner, then owners of said club, informed numerous persons, business and professional men of Vincennes, and who, as "fans", were interested in and patrons of the game, that they were short in the matter of money to finance said ball club and keep the same at Vincennes, and that, unless they had help, they would take their players and go to some other city where baseball games were more liberally patronized and where Bullock and Hoepner thought there was a better chance to operate said ball club at a profit. As a result of this talk, a meeting was held at the City

Hall in Vincennes on the evening of May 12, 1922, which was attended by a number of business men of said city, including some of the appellants herein. At this meeting, Bullock informed those present that he was behind in the matter of the salaries due to his players, and that unless money was raised, he would move the team to another city. At this meeting, Wilkerson, Phillippe and Fuller were appointed as a committee "to devise a plan for raising the money necessary to meet the requirements of Bullock and Hoepner and thereby keep the ball club in Vincennes."

On the evening of May 13, another meeting was held and plans matured for making a canvass of the city to secure the required funds. It was determined to have the solicitors which were to be sent out to make such canvass, solicit donations of money from professional, from business men, and from all persons without regard to occupation who were interested in the matter of retaining said ball club in Vincennes, and also to solicit all such persons to buy "season tickets" to said ball park entitling the holder to see all ball games played therein. All of the appellants except McFarland were appointed as an advisory committee to direct said canvass and to see that the money so raised was applied to its intended use. Of this committee, the appellant Wilkerson was president, one A. R. Cochran was secretary, and one John Hall acted as treasurer. The committee retained the control of the moneys it raised and applied the same to the payment of the expenses incident to the running of the club, which still continued under the management of Bullock and Hoepner. There is no evidence that Bullock and Hoepner and Kixmiller, or either of them, at any time transferred any interest whatever which they or either of them had in the Vincennes Baseball Association to any of the appellants. The evidence simply shows that they

gave of their time and money, as "boosters," in an endeavor to keep said club in their home city.   There is no evidence of any actual partnership, and, upon this issue, appellee, Wood, must fail.

The appellee, Wood, endeavors to avoid the lack of evidence as to there being any actual partnership between these parties by urging that, under the circumstances of this case, they are each estopped to deny the existence of such partnership, basing his argument in that behalf upon certain statements contained in articles written by one A. R. Cochran, a reporter for a newspaper published in said city, and the failure of the appellants to deny or repudiate the statements in said articles contained.   The statements relied upon, as published in said newspaper, were as follows:  "The directors of the Vincennes Baseball Association, selected by the committee named at the meeting held in the City Hall Thursday night, met last night and perfected an organization by electing officers and devising plans for carrying the schedule through the present season and giving to Vincennes the strongest independent team of players to be found in this section of the country."   This article then mentioned certain named persons as comprising said board of directors.   In the published article concerning the meeting held on the evening of May 12, appeared the following:  "The board will be appointed this morning and will immediately organize and elect the president, secretary, treasurer, and other officers necessary to the organization.   The board of directors will define a plan for financing the club until such time as the support of the fans places the team upon a paying basis and will take charge of the booking of games, advertising the attractions and in every way work to get the support of local fans by seeing that they are given their mony's worth at all times."

In neither of said published articles is there any direct and positive statement as to the ownership of said ball club. Putting it in its strongest terms, it may be said that the statements contained in said published articles are sufficient to support the reasonable inference that a partnership existed and that the appellants were members thereof. Is this a sufficient basis upon which to found an equitable estoppel? Lord Coke said (Coke, Lit. 352b): "Every estoppel, because it concludeth a man to allege the truth, must be certain to every intent, and not be taken by argument or inference." In this state, it has been expressly held that there can be no estoppel by inference. *Tinsley* v. *Fruits* (1898), 20 Ind. App. 534; *Lash* v. *Rendell* (1880), 72 Ind. 475. In *Mills* v. *Graves* (1865), 38 Ill. 455, 87 Am. Dec. 314, the court said: "Every estoppel ought to be a precise affirmation of that which creates the estoppel, and not by way of recital. It then follows from this rule, that mere loose expressions inadvertently made, in ignorance of the parties rights, or declarations ambiguous in their character, can not create a bar to the assertion of the truth." In *Dudley* v. *Pigg* (1897), 149 Ind. 363, the court said: "The rule is that, where an estoppel is relied upon, it must be pleaded with particularity and precision, and nothing can be supplied by intendment, and, where there is ground for inference or intendment, it will be against, and not in favor of the estoppel."

If the matter of "certainty" be waived, there still remains another defect in said appellee's position in this matter. In *Kiefer* v. *Klinsick* (1895), 144 Ind. 46, it was said: "The vital principle of an equitable *estoppel* is that of fraud. * * * The doctrine has no application where * * * the other party was not influenced by the acts asserted in estoppel." And in *Dudley* v. *Pigg, supra*, it was said:

—"One who insists upon the acts of another working an estoppel must show that he acted upon the same, and was influenced thereby to do some act which would result in an injury if the other person is permitted to withdraw or deny the act." In *Anderson* v. *Hubble* (1884), 93 Ind. 570, 47 Am. Rep. 394, it was said: "It is essential to the validity of an equitable estoppel that the person who affirms it to exist should show that he had acted upon the conduct of the other party, and, on the faith of that conduct, and influenced by it, had parted with some thing or right of value. It is quite clear that one who has not parted with value, or who has not placed himself in a position where he would suffer loss, can have no just reason to conclude his adversary from averring the truth." In *Pabst Brewing Co.* v. *Schuster* (1914), 55 Ind. App. 375, it was said: "That no man can set up another's act or declaration as the ground of an estoppel, unless he has himself been misled or deceived by such act or declaration is fundamental." The testimony of the appellee, Wood, as the same is set out in appellants' brief and which statement thereof is unchallenged by said appellee, was as follows:—"I never made any different or new contract from the first one I made when I first came to Vincennes under the contract with Mr. Bullock. I played right along under the contract and the salary offered me by Mr. Bullock which I accepted." This being true, said appellee certainly has not shown that he did any act in reliance upon the fact that the appellants, as partners, were his employers after May 12, 1922; he has entirely failed to bring himself within the rule as above stated, and is not therefore entitled to insist upon an estoppel. A reading of the cases of *Booe* v. *Caldwell* (1859), 12 Ind. 12; *Uhl* v. *Harvey* (1881), 78 Ind. 26; *Daily* v. *Coons* (1878), 64 Ind. 545; and *Strecker* v. *Coon* (1883), 90 Ind. 469, cited and relied upon by

said appellee will disclose that they are in harmony with the other cases above cited, as to the conduct of the party urging the estoppel, and that said appellee, upon the facts of this case, has not brought himself within the rule as therein announced.

Finally, the said appellee insists that the appellants are estopped because they did not "make publication and circulate it as widely as the notice had been circulated" that they were not partners, and were not the owners, operators, and directors of the Vincennes Baseball Association.

In Bigelow, Estoppel (6th ed.) p. 661, it is said: "It follows that it is not enough to raise an estoppel that there was an opportunity to speak which was not embraced; there must have been an imperative duty to speak." In *Allen* v. *Shaw* (1881), 61 N. H. 95, it was said: "To create an estoppel by silence, there must be not only an opportunity, but the apparent duty, to speak. The party keeping silent must know that some one is relying thereon, and is either acting or about to act as he would not if the truth were known to him." This being the law, the appellee not having done any act to his own prejudice upon the faith that the appellants were actually his employers, is not in a position to claim that there was, at least so far as he is concerned, any duty resting upon the appellants to disclaim any interest as owners of said ball club, or to disclaim that they were the employers of the players thereon.

The question as to whether a professional baseball player, a person not engaged in an "industrial" enterprise and a person who is not a producer of any commodity which is used or consumed by the public, is within the provisions of the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921) and, therefore, entitled to receive compensation in case he sustains an injury while engaged in his profession, is

a question not presented in this case, and one upon which, we do not express any opinion.

The evidence being insufficient to sustain an award of compensation as against the appellants herein, this cause is reversed, with directions to the Industrial Board to set aside said award as to each and all of the appellants herein, and for further proceedings.

Reversed.

Remy, C. J., Dausman, P. J., and Nichols, Batman, and McMahan, JJ., concur.