DRAKE ET AL. *v.* EGGLESTON

[No. 18,257. Filed October 10, 1952. Rehearing denied December 4, 1952. Petition to transfer denied March 6, 1953.]

308

*Kenneth Call,* of Gary, *Jesse W. McAtee* and *Riley, Reed, Murphy & McAtee,* of East Chicago, and *Cope J. Hanley,* of Rensselaer, for appellants.

*Emmet M. LaRue,* of Rensselaer, *William S. Isham,* and *Fraser & Isham,* of Fowler, for appellees.

CRUMPACKER, J.—The appellant Alice Drake is the widow of one Harry L. Drake, late of Chicago, Illinois, who died April 11, 1946. The other Drake appellants are his minor children and the appellant, James G. Potter, is their legal guardian. Upon the death of Harry L. Drake his said widow and two children inherited, through his will, 527 acres of farm land in Jasper County, Indiana, then under written lease to the appellee, Jake L. Eggleston. On July 1, 1947, the appellants, by written notice, declared said lease to be forfeited by reason of alleged violations of its terms by the appellee and therein demanded immediate possession of the land involved and, upon the refusal of the appellee to comply therewith, they brought this suit in the Jasper Circuit Court whereby they seek judgment declaring the forfeiture of said lease, the restoration of said lands to their possession, and damages for its wrongful detention.

Their complaint is in four paragraphs and each charges a forfeiture of the lease involved by reason of the appellee's conduct. The first alleges that he failed to pay rent according to the terms of said lease; the second alleges a sub-letting of the premises contrary to

the express provisions of the lease; the third charges waste; and the fourth alleges conversion through the sale of soil off the land and a failure to account for the proceeds. The appellee answered to the effect that he paid all rent required of him by the lease and did not sub-let the premises but if he failed to comply with the strict terms of the lease in either respect the appellants have waived any rights they might have predicated thereon and, by reason of their conduct and that of their predecessor in title, Harry L. Drake, they are now estopped from asserting forfeiture. He further defended on the theory that forfeiture would result in gross inequity and the unjust enrichment of the appellants. He specifically denies waste and conversion. The appellee also filed a cross-complaint in two paragraphs by which he sought first to have the lease in suit reformed by the deletion of the clause forbidding subletting on the ground of mutual mistake, and second, the recovery of $731 for money he spent at the special instance and request of the appellant for the improvement of a building on the premises.

The trial of these issues was to the court which found against the appellants on all paragraphs of their complaint and against the appellee on the paragraph of his cross-complaint seeking reformation of the lease and for him in the sum of $731 on the second paragraph of said cross-complaint. Judgment went accordingly. The appellants' sole assignment of errors is the overruling of their motion for a new trial which contains but two specifications: (a) that the decision of the court is not sustained by sufficient evidence; and (b) that the decision of the court is contrary to law. The appellants' brief contains no discussion of the waste and conversion issues nor does it challenge the judgment for the appellee in the sum of $731 on the second paragraph

of his cross-complaint and we therefore treat those questions as waived.

The lease involved in this controversy creates a 10 year leasehold estate in the appellee beginning March 1, 1945, and ending March 1, 1955. Concerning rent, subleasing and forfeiture it provides as follows:

"In consideration of the Premises, said party of the second part hereby convenants and agrees to occupy said premises in a careful tenant-like manner, to pay to the party of the first part for the rent thereof, the sum of Thirty thousand ($30,-000.00) dollars, without any relief whatever from Valuation or Appraisement laws, as follows, to wit: said rental to be on an annual rental of $3,000.00 the first years rent to be payable on or before the 1st day of January, 1946, and a like sum to be paid on or before the 1st day of January of each year thereafter during the term of this lease. The lessee shall have the privilege during each year of this lease to make improvements on the leased premises such as clear-trees and brush, removing stone, ditching, tiling, constructing abutments, drains, dams, pump houses and installing pumps and engines to an amount not to exceed $1,000.00 in each year, which sum the lessor agrees to credit against the annual rental conditioned that the lessee shall furnish to the lessor satisfactory evidence of expenditures made in the form of cancelled checks or receipted bills, which evidence shall be submitted to the lessor at the time of paying the annual rent thereunder, it being expressly understood and agreed that the cash rental to be paid the lessor in any one year shall not be less than $2,000.00 and that all improvements so made as above set forth shall become a part of the real estate and remain on the leased premises as improvements at the termination of this lease.

"And also to surrender at the end of said term, or at the expiration of said Lease, to said party of the first part, without notice, in as good condition as they now are, natural wear and decay and unavoidable accidents excepted. And the said party of the second part further agrees not to sub-lease

said premises without the written consent of the party of the first part.

"It is expressly understood and agreed that if said party of the second part shall violate any of the agreements herein contained, or if any part of said rent shall be in arrear for ten days, that this lease shall be forfeited, and said party of the first part shall be entitled to the immediate and peaceable possession of the premises without notice."

The questions we find it necessary to discuss are: (1) Did the appellee violate the terms of this lease by (a) failing to pay rent as therein provided, and (b) by sub-letting the premises contrary to its terms; and (2) if so, are the appellants, through the conduct of their predecessor in title, estopped from asserting forfeiture?

The undisputed evidence shows conclusively that the 1946 rent was not paid by the appellee in the manner required by the lease. To apply on rent for that year he paid $2,000 in cash but to this day has not furnished the appellants with "cancelled checks or receipted bills" showing expenditures for work done on the land that year in the amount of $1,000. This, standing alone, would warrant a forfeiture of the lease because the parties thereto so expressly stipulated. However immediately after the lease was executed, and notwithstanding its terms, the appellee indicated to Drake that he intended to do all the drainage and clearing work contemplated by the lease immediately and in one operation rather than in yearly installments to which Drake affirmatively agreed. Acting on this understanding the appellee did such work in July and August of 1945 at a total cost of $10,393.13 and informed Drake of its completion that fall. Later he furnished the appellants with an itemized statement of such expenditure which was received by them without comment or protest.

There is a wide spread doctrine known as "promissory estoppel" which may be said to be a phase of estoppel *in pais*. It is most frequently applied by the courts in cases where one, against whom estoppel is urged, has signified his intention to abandon an existing right and thereby leads another to act to his detriment in the event such right is subsequently asserted. See Note: 115 A. L. R. 152, 155. Drake unquestionably had the right to have the drainage and clearing work, contemplated by the lease, done in installments of not to exceed $1,000 in value each year for 10 years. He knew, however, that the appellee proposed to do it all immediately and that his purpose in seeking a 10 year lease was to give him time to recoup a necessary outlay of approximately $10,000. After the lease was signed and his right to an installment performance of work accrued, he affirmatively approved of the appellee's proposal that it be done at once and thus led the appellee to expend $10,000 for which the appellants now seek to deny him credit. It seems to us that Drake clearly abandoned his right to an installment performance of the work specified in the lease and that he is now estopped from asserting a forfeiture by reason of an act which he led the appellee to perform by his conduct after the lease was signed and for which, it is reasonable to assume, he knew the appellee would expect credit. In other words Drake, having abandoned his right to an installment performance of the work specified by the lease and having benefited by all the improvements and work on his land for which he contracted, cannot now, through his successor in title, deny the appellee installment credit therefor as the lease provides.

In reference to the appellants' claim of forfeiture by reason of a sub-letting of the premises contrary to

the express provisions of the lease, it has been said "A lessee's common law right to sub-let may be expressly restricted by a covenant or stipulation against sub-letting (as it is in the present lease) but since such restrictions are in restraint of alienation, they are not looked upon with favor by the courts; they are construed with the utmost jealousy and very easy modes have always been countenanced for defeating them." 32 Am. Jur., Landlord and Tenant, §397, p. 333, and cases cited. In line with this tendency not to extend stipulations against sub-letting beyond the terms expressly used in the lease, it seems to be the generally accepted view that a covenant not to sub-let the premises, as distinguished from a covenant not to sub-let the premises or any part thereof, is not broken by a sub-letting of a part. *Denecke* v. *Miller and Son* (1909), 142 Iowa 486, 119 N. W. 380; *Presby* v. *Benjamin* (1902), 169 N. Y. 377, 62 N. E. 430, 57 L. R. A. 317. In the lease before us the covenant is general while the sub-lease to Gehring is for a part of the premises only and therefore we hold there has been no breach of the covenant involved.

We find the evidence ample to sustain the court's decision which in all respects appears to be in accordance with the law.

Judgment affirmed.

## ON PETITION FOR REHEARING

CRUMPACKER, J.—The appellants' petition for a rehearing calls our attention to two inaccuracies in the resume of the record in this case as stated in our initial opinion. Although wholly immaterial to a decision of the controversy we take this opportunity to correct the same. The appellants' title to the land in controversy

vested in them through descent and not by will and judgment for the appellee on the second paragraph of his cross-complaint, which is not questioned in this appeal, is $378.14 and not $731. Confessing a lack of meticulous care in our statement of immaterial facts we proceed to a consideration of appellants' petition on its merits.

We are charged primarily with justifying the trial court's decision through the indulgence of inferences arising or flowing from the direct and positive evidence in the record. The appellants do not challenge such inferences as unreasonable, remote or speculative, but rest their contention on the bald and uncompromising statement that equitable estoppel cannot be found by inference or presumption however reasonable or compelling. In support of this principle we are referred to authorities from Lord Coke to the pronouncement of this court in *Wilkerson* v. *Wood* (1924), 81 Ind. App. 248, 143 N. E. 166. If there is any thread of universally applicable doctrine running through these decisions it seems to be that no man should be concluded from setting up the truth unless it clearly appears, without resort to argument or dubious inference, that his own conduct has led another to act to his detriment.

If a case for equitable estoppel is rounded out by an inescapable or compelling inference arising from established facts, it seems to us that such inference has all the dignity and probative value of direct and positive testimony, and there is no basis, in reason or logic, for its exclusion from consideration. See *Johnson* v. *Western etc., Mining Co.* (1923), 81 Ind. App. 79, 140 N. E. 559; 19 Am. Jur., Estoppel, §43.

In our initial opinion we made this statement: "However, immediately after the lease was executed, and notwithstanding its terms, the appellee indicated to Drake that he intended to do all the drainage and clearing work contemplated by the lease immediately and in one operation rather than in yearly installments to which Drake affirmatively agreed." The appellants object to that part of such statement which reads: "to which Drake affirmatively agreed," and say there is no evidence of any such agreement on Drake's part, and that our conclusion in that regard could have been reached only through inference. However, the record discloses that after the appellee had stated what he proposed to do, notwithstanding the terms of the lease, he was asked this question: "Did Mr. Drake say anything to that?" To this the appellee replied: "I don't recall the words he said; it was an approval of it." Thus, we submit that our conclusion that Drake affirmatively agreed to the appellee's proposal was reached without the aid of inference and was based on direct and positive testimony.

The appellants next objected to our statement that "Acting on this understanding the appellee did such work in July and August, 1945." They say we could have arrived at such a conclusion only through inference as it is unsupported by direct testimony to that effect. It is true that the appellee did not testify in so many words that he relied upon the understanding he had with Drake, and therefore did all of the work contemplated by the lease in one operation, rather than in installments as the lease provided. Nevertheless, he did exactly what he and Drake had agreed upon, and it seems inconceivable that he did so without reference to such agreement. Actions speak as well as words, and when a mental process is in issue

they may even overcome direct testimony to the contrary. As the appellee so aptly says: "Where the issue is equitable and involves nothing but fair dealing, any technical rule requiring Eggleston to state expressly, 'I relied on what he said' seems foolish," when the inference that he did so is inescapable.

Still insisting on their contention that equitable estoppel cannot be found on inference the appellants say that at no time after the lease in suit was executed was there anything said between the parties concerning the credit the appellee was to have for the $10,000 in work he proposed to do in 1945, and that we recognized such to be the state of the record when we said: ". . . it is reasonable to assume that he (Drake) knew the appellee would expect credit." The written lease in suit was affected in only one particular by the conversation between the parties immediately after its execution. Drake surrendered his right to have the contemplated construction work done in ten installments but otherwise the rights of the parties remained as provided by the lease.

Therefore, we do not need to indulge in inference to say that Drake knew that the appellee expected credit at the rate of $1,000 per year because the lease so provided.

Finally, the appellants contend that the doctrine of estoppel *in pais* has no application where no fraud, concealment, or attempt to mislead is proven, and that the evidence in this case shows none. We accept the principal of law as stated but are of the opinion that the meaning of the word "fraud" cannot be limited to a situation where one entertains a preconceived design to circumvent or cheat another. It includes a breach of duty, independent of moral guilt, which the law declares fraudulent because of its ten-

dency to violate confidence or deceive others. *Budd* v. *Board of Commissioners of St. Joseph County* (1939), 216 Ind. 35, 22 N. E. 2d 973; *Haywood Pub. Co.* v. *West* (1941), 110 Ind. App. 568, 39 N. E. 2d 785; 37 C. J. S. (Fraud), §2c.

While the facts in this case may not be sufficient to show actual fraud involving an intent to deceive they do show fraud in law, which includes conduct the end result of which is unconscionable, and that is sufficient to invoke the doctrine of equitable estoppel.

Rehearing denied.

NOTE.—Reported in 108 N. E. 2d 67 and 901.