## BRADLEY *v.* ELY.

[No. 2,892.   Filed January 24, 1900.]

CONTRACTS.——*Construction.*—*Partnership.*—An agreement with the owner of certain real estate providing that "the party of the first part has this day rented and farm let unto the party of the second part his said farm * * * for a term of one year, * * * with the privilege of continuing the same from year to year, * * * and at the expiration of each year during the term of such tenancy, * * * they shall meet on proper notice, * * * adjust their business and claims pertaining to said renting, * * * the party of the second part to have charge of said farm, and to have full power to make all necessary purchases for said farm, and to buy and sell such stock, and for such price as may be mutually agreed upon. * * * Two-thirds of the net profits to go to the party of the first part and one-third thereof to the party of the second part and losses and expenses to be apportioned two-thirds to the party of the first part and one-third to the party of the second part," does not create a partnership, but is merely a contract for compensation for services to be rendered for the cultivation of the farm.

From the Bartholomew Circuit Court.   *Reversed.*

*S. Stansifer* and *C. S. Baker,* for appellant.

*M. D. Emig, G. W. Cooper* and *C. B. Cooper,* for appellee.

COMSTOCK, J.—The appellee, plaintiff below, sued James L. Hargis and James L. Bradley, as partners, as J. L. Hargis & Company.   The complaint was in two paragraphs; the first on a promissory note executed by J. L. Hargis & Company to the appellee; the second was for money had and received to the use and benefit of the defendants, to pay off an indebtedness incurred in the operation and management of a large farm operated, as alleged, by the defendants as partners.   Appellant filed his sworn answer to the complaint

in general denial. The finding and judgment of the court was for the appellant on the first paragraph of the complaint, and against Bradley and Hargis on the second paragraph. Bradley alone appeals. The error assigned is the action of the court in overruling appellant's motion for a new trial. Among the reasons specified in the motion for a new trial are "that the finding is not sustained by sufficient evidence, and is contrary to law." The record shows that the consideration of the note which was executed by Hargis in person was for the same money loaned to Hargis in person, and declared for in the second paragraph of the complaint.

The record shows that on the 3rd day of January, 1880, appellant, then and still the owner of the farm in Bartholomew county, near Edinburg, mentioned in the second paragraph of the complaint, and then and still residing in the city of Indianapolis, entered into a written contract with James H. Hargis for the cultivation of the farm; that, under the contract, he (James H. Hargis) resided upon and cultivated the farm until 1890, when his son, J. L. Hargis, who for some time had acted as his father's foreman, moved on the farm, his father moving off, and during the son's occupancy and cultivation of the farm the alleged indebtedness accrued. The record shows that there was no contract for the occupancy or cultivation of the farm, written or oral, between appellant and James H. Hargis or J. L. Hargis, other than the written agreement with James H. Hargis. There is evidence that J. L. Hargis succeeded to the position and rights of his father, J. H. Hargis.

The second paragraph alleges a partnership between J. H. Hargis and the appellant. Counsel for appellee state in their brief that the court found that they were partners, and that the money was used in the discharge of indebtedness created for the benefit of the partnership. Appellee contends that the contract made the parties thereto a farm partnership. Appellant contends that it is a contract "to rent and farm let", as declared therein, and does not create

a partnership of any kind. Counsel for appellee, in support of their view, argue that Bradley furnished the farm and two-thirds of the personal property; one-third of the personal property was appraised and charged to Hargis, who, by the terms of the contract, became the owner of one-third the personal property for the purchase of which he became indebted to Bradley, and agreed to pay interest thereon; he furnished his own and hired labor; he had the power of general manager; there was to be a showing of the losses and profits; "two-thirds of the net profits to go to the party of the first part, and one-third thereof to go to the party of the second part, and the losses and expenses to be applied, two-thirds to the party of the first part and one-third to the party of the second part."

It is claimed by counsel for appellee that these terms and stipulations of the agreement made the contract one of partnership, citing 17 Am. & Eng. Ency. of Law, p. 854; *Brown* v. *Higginbotham*, 5 Leigh 583, 27 Am. Dec. 618; *Champion* v. *Bostwick*, 18 Wend. 173; *Pettee* v. *Appleton*, 114 Mass. 114; *Foughner* v. *Bank, etc.*, 141 Ill. 124, 30 N. E. 442; *Bank* v. *Butler*, 149 Ill. 575, 36 N. E. 1000. As appears from the brief of appellee, the cause was tried and decided upon the theory that Hargis and appellant were partners.

In the construction of a contract, we look to the intention of the parties. As said in George on Part., p. 31: "But it is the legal, rather than the declared, intention that controls. If the parties intend and do those things which the law declares constitute a partnership, then the parties are partners; and an express stipulation that they do not intend to form a partnership is of no avail. It simply shows that they have mistaken the legal effect of the agreement which they intended to make." The fact of partnership, in the case before us, depends entirely upon the written agreement. To copy it in full would unduly extend the length of this opinion. From an examination of its terms, we think it quite clear that the parties did not intend to form a partnership.

The words which are usually employed in articles embracing the formation of a partnership are wholly wanting. The intention to form a partnership is nowhere in terms expressed. Upon the contrary, the agreement recites that "the party of the first part has this day rented and farm let unto the party of the second part his [Bradley's] said farm,  \*  \*  \* for the term of one year, and after the 1st day of March, 1880, with the privilege of continuing the same from year to year on the terms hereinafter enumerated;  \*  \*  \* and at the expiration of each year during the term of such tenancy,  \*  \*  \* they shall meet on proper notice  \* \*  \* adjust their business and claims pertaining to said renting." Did the parties, without intending so to do, enter into a partnership? A partnership may be thus defined: If there is a joint undertaking and community of profit and loss, each party sharing in these mutually, and having a specified interest in the profits, not as compensation for services rendered, but as an associate in the undertaking, the relation of partner is formed. George on Part., at p. 50, says: "*Cox* v. *Hickman*, 8 H. L. Cas. 268, established the proposition that partners are the agents of each other, but, for reasons just explained, mutual agency is not the test of a partnership. The ultimate and conclusive test of a partnership is the co-ownership of the profits of the business. If there is community of profits, a partnership follows. Community of profits means a proprietorship in them, as distinguished from a personal claim upon the other associate. In other words, a property right in them from the start in one associate as much as in the other."

The contract provides for the purchase by the party of the second part of a one-third interest in the personal property on the farm. The remaining two-thirds interest was reserved in the party of the first part. This created a tenancy in common. It provides for the sale of the farm property on hand when the contract was entered into by "the mutual consent and agreement of the parties." The

parties were not made the mutual agents of each other, each as principal.

In *Roper* v. *Schaefer*, 35 Mo. App. 30, in which numerous authorities are cited, the rule stated in an instruction, as follows, was approved: "The court declares the law to be that a simple participation in the profits and losses of a business does not constitute a partnership, but there must be such a community of interests as enables each party to make contracts, manage the business and dispose of the whole property; and this rule is the same as to third persons, unless the party sought to be charged has so acted as to lead the plaintiff to believe a partnership to exist and to act upon such belief." The contract in question provides that the party of the second part will cultivate all the farming land thereon in such crops and in such proportions as the parties may agree upon from year to year; that he will plow and gather in good season or order, circumstances permitting, and put in a crib or garner; and the parties are to sell the product of said farm at such prices as said parties may agree upon from time to time. "The said party of the second part to have charge of said farm and to take full power to make all necessary purchases for said farm, and to buy and sell such stock and for such price as may be mutually agreed upon. The party of the second part to keep a complete and correct account of all purchases and sales of any kind and character pertaining to the management of said farm under this contract which shall be open to the inspection of both parties." These provisions are consistent with the theory of tenancy, and with the foremanship of the party of the second part, and inconsistent with the theory of partnership, because the right of a partner to inspect the books is an incident of partnership not dependent upon contract. The party of the first part is to have two-thirds of the price of all articles sold from said farm, and the party of the second part, one-third thereof. The agreement stipulates that the party of the second part shall not be required to replace buildings destroyed by fire.

This provision would seem wholly out of place in a partnership agreement, but the parties may reasonably have had in mind the rule that ordinarily leased premises are to be surrendered to the landlord in as good repair as when taken, ordinary decay excepted.

We are unable to agree with the learned trial court in the conclusion reached. We are of the opinion that the intention of the parties, gathered from the instrument, was not to enter into a partnership, and that without reference to their intention, as gathered from the extracts we have made from the contract descriptive of the relation intended to be created, the instrument can not be construed as creating a partnership. The specific interest in the profits given to the tenant were in compensation for services rendered. It contains no provision inconsistent with this interpretation, while the theory of partnership is against the apparent intention of the parties. We have not found the question easy of solution. The conclusion reached can not be said to be sustained by "an unbroken line of authorities", for in the reported cases there is confusion as to the effect of stated facts. The construction, however, adopted bears the ultimate test as announced by approved authorities, and is in harmony with the general tenor of the instrument. We cite the following Indiana cases as in line with quotations from George on Part., *supra*, and Collyer on Part., *supra :* *Macy* v. *Combs*, 15 Ind. 469, 77 Am. Dec. 103; *Stumph* v. *Bauer*, 76 Ind. 157; *Emmons* v. *Newman*, 38 Ind. 372; *Keiser* v. *State*, 58 Ind. 379. In *Macy* v. *Combs, supra,* at p. 471, the court said: "That the parties to the agreement did not intend, as between themselves, to form a partnership, is clear; but there is much confusion, and not a little conflict, in the authorities, as to whether the facts, here detailed, should constitute them, in the eye of the law, partners, as to third persons; although they did not so intend. The agreement has apparently one of the marked characteristics which usually enter into a partnership, in, and including the

division of, profits; namely, a share or interest in the profits. Story on Part. pp. 22, 91. *Waugh* v. *Carver*, 2 H. Bl. 235. But this must be a community of interest in the profits, and must be mutual, id., and Collyer on Part. B. 1, p. 11; and by this mutuality is meant that each party has a specific interest as a principal. Id. 14, 15; Collyer on Part. 8-11. It appears also to be settled by weight of authority, that, even as to third persons, each party must have an interest in the profits, as profits, and not a stipulated portion of the profits as a compensation for his labor. See the decisions sustaining this, collected in *Loomis* v. *Marshall*, 12 Conn. 69; and to the reverse, 17 Ves. 404. Unless in cases of fraud, or where the parties—Story 78, id. 86—or, at least, the one sought to be charged, have held themselves out as partners to third persons. In other words, if the party is not to receive a part of the profits *in specie*, but a sum of money calculated in proportion to a given quantity of the profits, then, even as to third persons, he would not be a partner, but an agent or servant."

Judgment reversed, with instruction to sustain appellant's motion for a new trial.