## BREINIG ET AL. *v.* SPARROW.

[No. 6,175.　Filed February 7, 1907.]

1.　CONTRACTS.—*Written.—Implications.—Parol.*—A contract, between lessees of certain grounds and a street railway company, for the purpose of arranging for the construction and conduct of an "electric park," stipulating that "it is necessary that aid and assistance be extended" to such lessees by such company, imports that such company will aid in the construction of such park; and such agreement relative thereto might rest in parol.　p. 460.

2.　PARTNERSHIP.—*Definition.*—"Partnership" imports "the relation subsisting between two or more persons who have contracted together to share as common owners the profits of the business carried on by all or any of them on behalf of all of them."　p. 460.

3. PARTNERSHIP.—*Intention.*—The fundamental question in determining whether a partnership exists, is to ascertain the real intention of the parties. p. 460.

4. SAME.—*Intention.*—*How Ascertained.*—The real intention of parties to create a partnership is to be deduced from all of their acts; and their purpose not to create a partnership, though expressed in terms, is not controlling, where the facts are otherwise. p. 460.

5. SAME.—*Test.*—*Profits.*—The true test of a partnership is the parties' co-ownership of the profits as proprietors of the business. p. 461.

6. SAME.—*Partners.*—*Estoppel.*—A person who knowingly suffers himself to be represented as a partner is estopped to assert the contrary to one who was induced thereby to extend credit to the firm. p. 461.

7. ESTOPPEL.—*Knowledge of Truth.*—No estoppel lies in favor of a plaintiff who knew the truth before the transaction in suit. p. 461.

8. PARTNERSHIP.—*Partners.*—*Estoppel.*—*Indemnity.*—A person holding himself out as a partner, though the creditor knew that such person was to be indemnified by the real partners, is estopped to deny that he was a partner, but is primarily liable to such creditor, the indemnitors being liable to him. p. 461.

9. SAME. — *Parties.* — *Corporations.* — A corporation has no power to enter into a partnership, unless its charter or the statute confers same. p. 462.

10. SAME.—*Corporations.*—*Estoppel.*—A corporation, though it may not lawfully become a partner, is estopped to deny that it is, in an action by a third person against it for the enforcement of a contract made for the furtherance of the objects of its creation. p. 462.

11. SAME.—*Street Railroads.*—*Electric Parks.*—A contract by a partnership, of which a street railroad company was a member, to construct the buildings for an "electric park," one motive being the increase of such company's traffic, renders such company liable, by estoppel, for the cost of such construction. p. 462.

12. CONTRACTS.—*Ultra Vires.*—*Illegal.*—*Corporations.*—A contract made by a corporation, because of which others have been induced to expend money, binds such corporation, where such contract is merely *ultra vires*, and not illegal. p. 462.

13. PARTNERSHIP.—*Street Railroads.—Electric Parks.*—A street railroad company which contracts with owners of an "electric park" to assist them in constructing such park, in consideration of a share in the profits to be derived, is liable to the building contractors of such park, though it has no interest in the ownership thereof.  p. 463.

14. SAME.—*Street Railroads.—Electric Parks.—Contracts.— Construction by Acts.*—A contract by which a street railroad company was to give help and asistance to the owners of an "electric park" in consideration of certain profits, will be construed in the light of the subsequent conduct of the parties, in determining what was meant thereby.  p. 464.

15. SAME. — *Street Railroads. — Estoppel.* — Where a street railroad company enters into a contract with the owners of an "electric park" to give assistance in the construction of necessary buildings, because of which plaintiff constructed such buildings, largely under the direct supervision of the officers of such company, such company cannot be heard to deny its liability therefor.  p. 464.

16. CORPORATIONS.—*Ultra Vires Acts.—Personal Liability of Officers.*—Where a street railroad company is held liable on account of a partnership entered into by it *ultra vires*, its officers cannot be held liable on the ground that they acted without authority in the partnership transaction.  p. 467.

From Knox Circuit Court; *Orlando H. Cobb,* Judge.

Suit by George M. Sparrow against Henry L. Breinig and others. From a decree for plaintiff, defendants appeal. *Affirmed in part. Reversed in part.*

*C. B. Kessinger* and *Cullop & Shaw,* for appellants.

*Samuel W. Williams* and *Benjamin M. Willoughby,* for appellee.

ROBY, J.—Suit by appellee against appellants for the foreclosure of a mechanic's lien and for a personal judgment.

Benjamin G. Hudnut and the Vincennes Citizens Street Railway Company appealed from the judgment for $3,630 rendered against them and their coäppellants Breinigs. The error assigned by each of said appellants is in the overruling of their separate motions for a new trial, and the grounds stated in such motions are that the finding of the

court was not sustained by sufficient evidence and was contrary to law.

Appellee, on May 10, 1904, entered into a building contract, in writing, by which he agreed to construct a casino or electric park, on Fairground avenue, in Vincennes, Indiana, in accordance with certain plans and specifications, and in consideration of $3,108.75, seventy-five per cent of said price to be paid upon estimates during the construction, and the residue at the completion of said building. The contract was signed by Henry L. Breinig and appellee. It is sought in this suit to hold appellants Hudnut and said company for the contract price of said building, upon two theories set up in different paragraphs of complaint: (1) That they held themselves out as partners with the Breinigs, under the firm name and style of H. Breinig; (2) that they were in fact associated with Breinigs in said enterprise and therefore liable with them under said name. There was a trial by the court, without a jury, and a finding for appellee, as against the three Breinigs and appellants Hudnut and said company and each of them, in the sum of $3,630, for which sum judgment was accordingly rendered. Before executing the contract sued upon, appellee read a contract which had been theretofore executed and which was in the words and figures following:

"Terre Haute, Indiana, May 2, 1904.

This indenture made as above dated between Henry L. Breinig, Charles O. Breinig, and George J. Breinig, all of Terre Haute, Indiana, their successors and assigns, first parties, and the Vincennes Citizens Street Railway Company of Vincennes, Indiana, its successors and assigns, second party, witnesseth:

Whereas, said first parties have leased from Fred Fossmeyer, of Vincennes, Indiana, a certain tract of ground on Fairground avenue in said city and situated also on the street railway, and whereas, it is the intention of said parties of the first part to conduct upon

said ground various amusements, consisting of a theatre, merry-go-round, and other forms of amusement, and whereas, in the conduct of said business it is presumed that certain benefits to the street railway will be derived, and whereas, in order to procure funds for the establishment and conduct of said amusement it is necessary that aid and assistance be extended said first parties by said second party, now, therefore, this agreement witnesseth:

(1) That first parties in procuring the help and assistance of said second party, either by indorsement or otherwise, hereby obligate themselves fully to pay off any and all obligations guaranteed or indorsed by second party. (2) That in the conduct of said amusements above referred to the first parties hereby agree to establish and maintain only first-class, respectable lines of amusements. (3) That said first parties agree that said amusements shall be carried on under the name of the "Electric Park," and that the entrance fee thereto shall in no case be less than ten cents per person, and that when patrons have walked to said park and paid ten cents admission thereto said amount shall accrue wholly to first parties, and that when patrons shall have ridden to said park and paid fifteen cents thereto, including transportation and admission, of said latter amount the sum of seven cents per passenger shall accrue wholly to said first parties and the sum of eight cents per passenger to said second party, settlement to be made weekly, and as the essence of this agreement is mutual profit, said first parties agree to use their best endeavor to induce travel to said park over the lines of railway of said party. (4) That as mutual results beneficial to all parties hereto are presumed to follow the instalment of said park, it is hereby mutually agreed that all parties hereto shall work in harmony to that end in all things relating thereto. (5) That neither party hereto is to sell, assign, or transfer any rights hereunder without the written consent of the other, but this contract may be altered or amended at any time by both parties mutually consenting in writing. (6) That said second party is to wire said park for light and power pur-

poses at its expense and furnish current to said first parties for power and light at six cents per 1,000 K. W., settlement to be made weekly. (7) That for and in consideration of the sum of $1, and other considerations herein named, this contract and agreement is signed by all parties hereto this 2d day of May, 1904. (8) That this agreement be and remain in full force and effect from this date until October 1, 1906. Executed in duplicate.

Henry L. Breinig,
Charles O. Breinig,
George J. Breinig,
Vincennes Citizens Street Railway Company,
By B. G. Hudnut, president."

1. This instrument does not contain an agreement in express terms by the railway company to make advances, but such arrangement is impliable, and the agreement relative thereto might rest in parol.

2. Partnership is defined as "the relation subsisting between two or more persons who have contracted together to share, as common owners, the profits of the business carried on by all or any of them on behalf of all of them." Shumaker, Partnership (2d ed.), §1. See, also, *Meehan* v. *Valentine* (1892), 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835.

3. "It is now well established that the fundamental rule to be observed in determining the existence of a partnership is that regard must be paid to the true contract and intention of the parties, as appearing from all the facts of the case." Shumaker, Partnership (2d ed.), §13. And see *Bradley* v. *Ely* (1899), 24 Ind. App. 2, 79 Am. St. 251.

4. The intention which controls in determining the existence of the relation is the legal intention deducible from the acts of the parties. If they intend to do the things which in law constitute a partnership, then they are partners, although their purpose was to

avoid the creation of such relation, and they have carried it to the extent of expressly stipulating that they are not to be partners. *Bradley* v. *Ely, supra; Shrum* v. *Simpson* (1900), 155 Ind. 160, 49 L. R. A. 792; Shumaker, Partnership (2d ed.), §13.

"The ultimate and conclusive test of a partnership is the co-ownership of the profits of the business. If there is community of profits, a partnership follows. Community of profits means a proprietorship in them, as distinguished from a personal claim upon the other associate. In other words, a property right in them from the start in one associate as much as in the other." *Bradley* v. *Ely, supra.* See, also, *Macy* v. *Kombs* (1860), 15 Ind. 469, 77 Am. Dec. 103; *Emmons* v. *Newman* (1871), 38 Ind. 372.

The doctrine of estoppel operates against one who knowingly suffers himself to be represented as a partner in a particular firm, and renders him liable to one who is thereby induced to give credit to the firm. *Booe* v. *Caldwell* (1859), 12 Ind. 12; *Dailey* v. *Koons* (1878), 64 Ind. 545; *Thompson* v. *First Nat. Bank* (1884), 111 U. S. 529, 4 Sup. Ct. 689, 28 L. Ed. 507; Shumaker, Partnership (2d ed.), §35.

There can be no basis for an estoppel where the party seeking to raise it knew the truth from the beginning, therefore, where a creditor knows of the holding out, but also knows that the parties are not partners, no estoppel in his favor arises. *Booe* v. *Caldwell, supra;* Shumaker, Partnership (2d ed.), §35, p. 73.

Knowledge by the creditor that the real partners have agreed to indemnify the party lending his name, does not prevent an estoppel against him, but so holding himself out he becomes primarily liable to a creditor and must seek his indemnity from those who promised it. Shumaker, Partnership (2d ed.), §35, p. 67; 1 Lindley, Partnership (5th ed.), *41.

A corporation has no power to enter into a contract of partnership, unless such power is expressly conferred. *Pearce* v. *Madison, etc., R. Co.* (1858), 21 How. 441, 16 L. Ed. 184; *Pittsburgh, etc., R. Co.* v. *Keokuk, etc., Bridge Co.* (1889), 131 U. S. 371, 9 Sup. Ct. 770, 33 L. Ed. 157; 1 Clark & Marshall, Priv. Corp., §185; *Geurinck* v. *Alcott* (1902), 66 Ohio St. 94, 63 N. E. 714. Exceptions to the rule arise when the corporation is expressly authorized by its charter to make such contracts. *Butler* v. *American Toy Co.* (1878), 46 Conn. 136; 1 Clark & Marshall, Priv. Corp., §185d, p. 493.

Nor does it apply to prevent the law from imposing upon the corporation the liability of a partner as to third persons by reason of a contract made by it in furtherance of the objects of its creation, for the law may impose such a liability not only when there is no intention to become a partnership, but also when no contract of partnership could have been made. *Cleveland Paper Co.* v. *Courier Co.* (1887), 67 Mich. 152; *Catskill Bank* v. *Gray* (1852), 14 Barb. 471; *French* v. *Donohue* (1882), 29 Minn. 111, 12 N. W. 354; 1 Clark & Marshall, Priv. Corp., §185d, p. 493.

The contract herein set out was intended to further the business of the appellant corporation. Its terms and the facts proved show that it was made for the purpose of creating additional traffic. If the park had been put in operation and proved a source of income to the corporation, the contract thus executed by one party and its benefits received by the other would have been binding upon both, but the operation of such park and the receipt of such additional income is not essential to the liability which is based upon the principle of estoppel.

If a corporation makes a contract which is merely *ultra vires* and not illegal, and others have thereby been induced to expend money, the corporation will be bound by its contract. *State Board, etc.,* v. *Citizens St. R. Co.* (1874), 47 Ind. 407, 17 Am. Rep. 702; *Wright*

v. *Hughes* (1889), 119 Ind. 324, 12 Am. St. 412; *Franklin Nat. Bank* v. *Whitehead* (1898), 149 Ind. 560, 39 L. R. A. 725, 63 Am. St. 302; *Bedford, etc., R. Co.* v. *McDonald* (1897), 17 Ind. App. 492, 60 Am. St. 172; *City of Valparaiso* v. *Valparaiso City Water Co.* (1903), 30 Ind. App. 316.

It is declared in the contract that "the essence of this agreement is mutual profit;" "that mutual results beneficial to all parties hereto are presumed to follow the installation of said park;" and "that when patrons shall have ridden to said park and paid fifteen cents thereto, including transportation and admission, of said latter amount the sum of seven cents per passenger shall accrue wholly to said first parties and the sum of eight cents per passenger to said second party." The agreement thus expressed is to share certain profits arising from the conduct of a joint undertaking. To the creation of such profits each party makes certain contributions, and whatever relation exists is limited to such enterprise. *Heshion* v. *Julian* (1882), 82 Ind. 576. It is not necessary to the existence of a partnership that both parties own a part of all property contributed to the common enterprise. The use of property to which one party retains title may be given by him as the whole or part of his contribution to the joint enterprise. The lawyer retains title to his library, the merchant to furniture and fixtures, the landowner to his building, adding to the capital of his firm the amount that the use of such property may be worth to it. The essence of the business thereafter carried on being mutual profit. It is expressly stipulated that the fund created by carrying and admitting persons to the park shall be divided, both railway company and park management having an interest therein. To produce this fund is the ultimate purpose of the arrangement. The use of the transportation facilities possessed by the railway company is an essential factor in its creation. The existence of a park and the operation of

amusements calculated to attract the public is also an essential factor thereto. The park company would not be liable for operating expenses of the railway, any more than the lawyer who used the library owned by his associate would become thereby liable for the purchase price of the books or the cost of insuring them, in the absence of a contract creating such liability. Neither would the railway company be liable for the operating expenses of the park in the absence of some agreement therefor, but the contribution to the business which the railway agrees to make is not limited to the use of its line.

In order to consummate a common enterprise "it is necessary that aid and assistance be extended said first parties by said second party." The stipulation follows that the "first parties in procuring the help and assistance of said second party, either by indorsement or otherwise, hereby obligate themselves fully to pay off any and all obligations guaranteed or indorsed by said second party." In the end, the cost of the improvement was to be borne by the owners of the park. What the railway company was to do in the way of assisting in the procurement of funds "for the establishment and conduct of said amusement" is not specifically stated. That it was to do something is clearly implied. The subsequent conduct of the parties therefore became relevant both as tending to show what construction they placed upon the contract and for the purpose of affording evidence as to those terms which were not reduced to writing.

The grounds upon which the building was erected by appellee were owned by Fred Fossmeyer. They were leased by him to the Breinigs on April 4, 1904. Appellant Hudnut was the president and principal owner of the railway company. Mr. Henry was its general manager, Mr. Gordon its secretary and treasurer, and also private secretary for appellant Hudnut, and these three gentlemen constituted its board of directors. Hudnut

selected the Fossmeyer land as the most available which could be procured for the purpose, having first examined other tracts and offered to lease ground belonging to the fair association. He told H. L. Breinig to go to a certain architect for plans for the building. Said Breinig went there and told the architect that Hudnut sent him. When bids were submitted, Breinig took them to Hudnut, who told him to accept that of appellee, which was the lowest. Breinigs had no capital of any consequence, and told Hudnut that it would take $5,000 or $6,000 to make the improvements. Hudnut told them to go ahead and make them, and subsequently had the written contract above set out prepared by his own attorney. It took about five weeks to complete the building, during which time Mr. Henry was on the ground about every day, and exercised a direct supervision over the improvement, carrying such supervision to the extent of changing the plan. When the building was about completed Hudnut examined it, directed that the ceiling be put on, and then told appellant Breinig, who was at Terre Haute, that the building was done. He signed a note with said Breinig for $1,000 "on a merry-go-round." He also advanced said Breinig $500, taking his note, and told him that he and the railroad company would sign a note for $3,000 if he (Breinig) could procure a loan. Said Breinig was unable to get the liquor license. The building was then moved across the corporation line, Henry directing where it should be placed. Still being unable to procure the license, Hudnut "said he did not want to put any more money in the enterprise. He had put in as much as he cared to put in." Appellee knew that said Breinig was never "worth anything," and that Hudnut was "a man of means." Breinig told him that "Hudnut was to finance the whole thing," and showed him the contract herein set out, which Sparrow read, after which he entered into the building contract, constructed the casino, and did other work at the instance of said Breinig, Hudnut and Henry, the value

of which is included in the judgment, and no part of which has been paid.

It is not necessary upon these facts to determine whether, taken in connection with the written contract, they are sufficient to justify a finding that the railway company was a joint party with the Breinigs to the Sparrow contract by reason of the conduct of the officers of the railway company. The inspection of the contract in question by appellee does not conclusively establish knowledge on the part of the latter that the railway company was not a party to the enterprise. Had the court found that Sparrow did know that no partnership relation existed, it would then become necessary to determine whether there was an actual partnership, but the finding of the court carries with it a finding within the issues that he did not have such knowledge, and we hold without hesitation that one who causes a contract to be so prepared as that a person of ordinary understanding, reading it, is thereby induced to believe that a partnership exists, and whose conduct, extrinsic to the writing, accords with such conclusion, cannot subsequently, after a third party has parted with value upon the strength of the belief thus induced, be permitted to deny liability.

The practical interpretation placed upon this contract by its officers justified appellee in relying upon it as evidencing the responsibility of the railway company. During the entire transaction, Hudnut was treated by the corporation so as to indicate that such contract was subject to the interpretation which he might place upon it. Its board of directors, its officers, and the majority of its stockholders, participated in both the enterprise and interpretation of the contract. Having thus induced appellee to incur the expense incident to the construction of the building in accordance with the contract which he was also thus caused to make, it is bound to him therefor.

The railway company being held liable, the proposition that an officer of a corporation, acting without authority,

binds himself, is not material.   The facts do not seem to us sufficient to establish the liability of Hudnut.

Judgment reversed as to appellant Hudnut, and affirmed as to the other appellants.