## APPEAL OF JOHN W. GRAHAM.

## APPEAL OF ALMA M. GRAHAM.

Docket Nos. 644, 645. Promulgated October 29, 1927.

An agreement between father and mother on the one hand and their son on the other that the son should have a one-third interest in the profits and losses of a partnership of which they were the sole members does not constitute the son a member of an ordinary partnership.

*George S. Olive, C. P. A.*, and *Frank C. Olive, Esq.*, for the petitioners.
*B. H. Saunders, Esq.*, for the Commissioner.

These appeals are from determinations of deficiencies in income tax for the year 1920 and in each appeal the amount involved is less than $10,000. The cases were consolidated for hearing. The sole

issue presented is whether John M. Graham, a minor son of the petitioners, was in fact and in law a partner with his parents in the profits of a partnership business conducted by them during the taxable year.

### FINDINGS OF FACT.

The petitioners, John W. Graham, and his wife, Alma M. Graham, have for several years conducted a business in Edinburg, Ind., and particularly from 1918 to January 1, 1920, said business was conducted as a copartnership by those two persons, and known as the Edinburg Cabinet Co.

At the beginning of the year 1920, their son, John M. Graham, who was then 14 years old, was attending high school, in the senior class, and expected to graduate at the close of the term. It was the son's desire, as well as the desire of his parents, that he continue his school work through higher institutions. The son was of good character and had shown evidences of thrift and economy.

It had been something of a custom practiced in the family of Graham and his wife, by their respective parents, to make some arrangements, when a son approached the age of majority, by which he was given an opportunity of owning in his own right funds sufficient to meet necessary expenses of education and maintenance, and then require him to pay his own way out of such funds. Such plan was resorted to with the idea that it would tend to develop thrift and economy in the boy, and for other purposes.

In the early days of 1920 the petitioners discussed such a plan for their son and then called him into the conferences and thoroughly explained their plans to him, and he agreed to them.

There were no written articles of copartnership executed nor was the agreement which the petitioners had made with their son reduced to writing. The oral agreement was simply that the son should have, for his own, one-third of the profits of the copartnership business which should be reduced by one-third of any losses sustained in any year. The son was given no part of the corpus of the assets. During the year 1920, each of the petitioners and the son were credited on the partnership books with one-third of the profits, which totaled for the son's part at the close of the year, $28,920.62.

The business during the year 1921 suffered a loss and the son was charged with one-third of such loss in the amount of $788.87. In 1922 the son was credited with one-third of the profits in the amount of $14,134.88.

After January 1, 1920, the son, John M. Graham, bore all of his own expenses and attended college, after finishing high school. He proved himself to be a steady, hard-working young man, thrifty and

frugal. At the close of the year 1922 he had on the books to his credit a little over $34,000. At that time it became apparent to the petitioners that under the arrangement made by them their son would soon own the entire business, since his withdrawals from the business were much less than those of his father and mother. It was then proposed that they buy out the son's interest at its then book value. The son agreed to this and the parents then bought out his interest and paid him the book value of his credit account, something in excess of $34,000. This was paid to him in Liberty bonds and other first-class securities which the son deposited in a safety-deposit box, since which time he has regularly collected the interest and dividends therefrom.

On May 1, 1918, there was executed and filed in the office of the Clerk of the Circuit Court of Johnson County, Indiana, the following certificate:

This certifies that the undersigned, conducting and transacting business at Edinburg in the County of Johnson and State of Indiana, under the name and style of "The Edinburg Cabinet Company" that the office thereof located at Edinburg in the State of Indiana and that the name and residence of each and every person engaged in said business or having an interest therein as follows, to-wit:

| Name. | Residence. |
|---|---|
| Alma Graham | Edinburg, Ind. |
| John W. Graham | Edinburg, Ind. |

### OPINION.

SMITH: Under the provisions of the Revenue Act of 1918 individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. (Section 218(a).) " The term partnership as used in these sections obviously refers only to ordinary partnerships." *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110.

Chancellor Kent defined a partnership as follows:

A contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and bear the loss in certain proportions. 3 Kent's Commentaries.

In Story on Partnerships a partnership is similarly defined as:

A voluntary contract between two or more competent persons to place their money * * * in lawful commerce or business, with the understanding that there shall be a communion of the profits between them.

Mr. Justice Lindley says:

By the law of this country, a valid contract of partnership can be entered into between any persons who are not under the disabilities of minority or unsoundness of mind, and are not convicts within the meaning of 33 and 34 Vict. ch. 23 * * * There are certain trades, businesses and professions

which can not be lawfully carried on either solely or in partnership, unless some statutory requisite has been complied with, but now that the disabilities under which spiritual persons formerly lay have been removed, the author is not aware that there is any class of persons (except convicts), who, being of sound mind and over twenty-one years of age, are rendered incapable of becoming members of partnerships * * * Agreements entered into between several persons, some of whom are by law incompetent to contract, are not wholly null and void, but are only in some respects less effective than if all the parties to them were competent. Hence there is nothing to prevent a person who is not *sui juris* from being a partner. But if any such person is a partner, his or her want of capacity to contract will necessarily give rise to consequences deserving special notice. Lindley on Partnerships (8th ed.), page 86.

Although a question might be raised as to whether a partnership containing one or more minors is an ordinary partnership within the meaning of the above-cited decision of the Supreme Court, we think it is not necessary to decide that question in this instance. The evidence of record does not show that the petitioners ever intended to enter into a partnership agreement with their son. The following is from the transcript of testimony of John W. Graham.

Q. Was that conversation with the boy with you and your wife?
A. Yes, both of us.
Q. You may relate to the Member of the Board as near as you can the conversation that took place with your boy.
A. We called him in at home there and told him that we were considering putting him on his own hook; that is, we would give him a one-third interest in the profits and losses of the Edinburg Cabinet Company, and he was to be on his own hook, his own responsibility from that time on; that he was to educate himself; about that time he was going away to school, in a few months from then, first going to Culver, Indiana, and to school in Indianapolis; we told him that out of that money he was to buy his clothes, pay his expenses—in fact, buy everything he used.

We wanted him to be careful, not to be too extravagant, but our idea, where the idea came from, was the same basis our whole family had started on, to put a boy on his own responsibility, when he is leaving you, when you are getting ready to send him away, to absolutely put him on his own responsibility, not only in a monied way, but to allow him to make his own arrangements for whatever he does, buy his own clothes, pay his expenses, do everything for himself.

The son assented to the proposition made to him. Likewise, when in 1922 it was suggested to the son that by reason of the fact that his expenses were not nearly as great as those of his father and mother and he was becoming the owner of too large an interest in the business, he readily acquiesced in their suggestion to the cancellation of the arrangement existing between them.

There is no evidence in the record that the son ever contributed any property or any services to the partnership and it is very improbable, considering his age, that he ever performed any services for the partnership. The arrangement, as the father stated in his testimony, was simply for the purpose of allowing the son to have a

fund from which he could support himself. In *Appeal of Julius Goldenberg*, 5 B. T. A. 213, the Board held that an oral agreement between a sole proprietor and members of his family that they should receive a stated percentage of the profits of the business did not establish the existence of a partnership. The application of the same principle to the case at bar leads us to approve the action of the respondent in denying the existence of an ordinary partnership between the petitioners and their minor son.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

Love, dissenting: I can not agree with the decision reached in this case. I personally heard the testimony in the case. From the manner in which the witnesses testified and their demeanor, I believe they were frank and honest, and that the three persons involved honestly intended to form and thought they had formed a partnership. I realize the fact that in tax matters an alleged partnership composed of members of a family, especially where minors who contribute nothing to the invested capital of the business, are involved, the *bona fides* of the transaction should be carefully scrutinized.

Having stated what is contained in the first paragraph above with reference to my personal impressions, I shall discuss the case purely in the light of the record, and on the same basis of facts on which the prevailing opinion handles it.

That the father, mother and son intended to form a partnership in the early months of 1920, and that they thought they had formed such an association is clearly evidenced by the manner in which they kept their books, crediting each member with one-third of the profits in years when profits were realized, and charging each with one-third of the loss in the year when a loss was sustained. In those three years they made partnership returns for income-tax purposes each reporting one-third of the profits. When the Commissioner, in 1924, denied the status of partnership, they all contested such decision and asserted the partnership status.

The testimony quoted in the prevailing opinion does not, in my opinion, negative in the least an intention to form a partnership. It merely undertakes to repeat what was said to the son concerning the purposes and objects of the then contemplated arrangements. The parents wanted to place upon their son responsibility, teach him economy and thrift, and initiate him into real business. They then sought to impress upon him those purposes. Had Mr. Graham, in response to counsel's request, answered by stating that they formed a partnership, or that they told the son they were going to take him in

the firm as a partner, such a response would have been subject to objection, and would probably have been met with a motion to strike the answer from the record, as a legal conclusion.

On the record, there are two questions of law that must be answered in the affirmative before a decision in favor of the contentions of the taxpayers shall prevail.

First, is a minor competent to make a contract of partnership. Second, can there be, in law, a partnership status when one member of the associated group contributes nothing, either in the way of money, property, or service, to the invested capital.

I believe it is uniformly held in all jurisdictions in the United States that a minor is competent to enter into a partnership contract and that the minority of a member does not affect the validity of such partnership status, and that no one, save the minor himself, may challenge the binding effect of such contract. I can not perceive wherein any serious " question might be raised as to whether a partnership containing one or more minors is an ordinary partnership within the meaning of the above-cited decision of the Supreme Court." There is nothing in the *Burk-Waggoner* case that tends to draw a distinction between ordinary, and extraordinary partnerships. There is no such distinction made or indicated in the revenue acts. So far as I am aware, no such distinction has been made by any recognized authority. A given status is either a partnership or it is not a partnership. In law it can not be a partnership, and not be an ordinary partnership. It is true that a statutory "limited" partnership may be formed. That, however, is a partnership with certain limitations regulated by statute. No question of that kind appears in the instant case.

In the case of *Continental National Bank* v. *Strauss*, 32 N. E. 1066, the following appears:

> There can be no question but that an infant may become interested in business as a general partner. Nothing forbade it at common law, and nothing in the statutory law now forbids it. His infancy was a factor in the situation, which enabled him to disaffirm his obligations and agreements, and, in that respect, the privilege was a personal one to himself. Infancy does not disable one from entering into contracts, and, so long as the infant does not avail himself of the privilege to set up his infancy in bar of or to avoid an obligation, his position and his acts are those of any responsible person. Any other view of his situation would lead to holding all his acts and engagements void, whereas they are voidable merely, at his election. * * * If the general partner, or one of the general parners, is a minor, he, nevertheless, is responsible for all partnership engagements, and will be unless and until he elects to set up the personal plea of infancy. But that he will do so is not to be presumed. To the contrary is the presumption.

Now considering the question of partnership, the following is found in R. C. L., vol. 20, p. 834:

To constitute a partnership it is not necessary that there should be a combining of property furnished in part by each of the associates, for one partner may contribute all of the capital and may even continue to own all of the property used in the business, the capital of the firm merely consisting of the right to use such property.

To the same effect is the case of *Breinig* v. *Sparrow*, 39 Ind. App. 455.

Partnership is a status, the result of contract, as the marriage relation is a status or relation. (R. C. L. vol. 18, p. 801, which cites a number of cases.) It is settled law that in the absence of a contract agreement to be partners, or an agreement among themselves to assume the duties, obligations and rights of partners, which the law designates a partnership, there can be no partnership status or relation between and among individuals. Individuals who are not partners, and never intended to be partners may be held liable to outside creditors under the doctrine of estoppel, but that holding does not make them partners.

There do not appear to be any adjudicated cases reported, in which the individuals claimed to be partners, and that status was denied and attacked by outside parties. It seems to have been uniformly conceded that when two or more persons agreed among themselves to be partners and claimed such status, no one had a right to say them nay. But it is contended that an essential element of a partnership is a contribution on the part of each and all its members to the corpus, or capital of the business, such contribution being either of money or its equivalent, or services.

There are some cases reported where the status of partnership was attempted to be proved, and on failure to prove any contribution to the corpus, the court refused to decree partnership, basing the decision largely on the ground that the alleged partner had contributed nothing to the corpus. But it must be borne in mind that in those cases, outside parties were striving to establish the partnership status over the protest and denial of the alleged partners. So far as we have been able to ascertain, the status or relation of partnership has never been disturbed by a decree of a court where the parties themselves asserted an agreement of partnership. The relation or status of partnership is created by contract. Without a contract agreement the status can not exist. With such an agreement whatever the terms of that agreement may be, there is a partnership, and on proof of such agreement the individuals are liable as partners.

The partnership test as to the existence of the partnership relation which is most widely accepted today and which is applicable especially between the parties themselves, irrespective of the rights of third persons is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. (R. C. L., vol. 20, p. 831, supported by many cases cited.)

We must bear in mind that an attack on a claimed partnership status by outside parties has not furnished the occasions for a discussion of this question but the cases in which the discussion has arisen have been those in which outside parties attempted to establish such status over the protest of the alleged partners and in the face of their denial of the existence of a contract. No one seems to have contested the existence of the status in the presence of a contract to that effect. The attempt in these cases was to prove existing conditions, which inevitably established the status of partnership as a matter of law, regardless of the name which the parties associated called themselves, by proving conditions which created a status recognized by law as a partnership, whether they called it a partnership or not. Under such conditions, it is obvious that the presence of such controlling factors as contribution to corpus, sharing of profits, authority of each member to bind the association, and other factors are looked to and their relative importance determined. No such condition is involved in the instant case. Here the partnership status is attacked from the outside, not to prove the existence of that status, but to prove its nonexistence, in the face of a contract among the parties themselves to be partners, and in the presence of the existence of one of the factors almost universally recognized as a *sine qua non* of the partnership relation, to wit, a sharing, as a principal, of the profits and losses of the business. Still bearing in mind that text writers and courts in discussing this question, discussed it from the standpoint of an attack from the outside, striving to prove the existence of factors which by operation of law created the status of partnership regardless of the name given to the association by its members, we quote further from Ruling Case Law, vol. 20, p. 800:

> The difficulty of formulating a definition of a partnership, at once accurate, comprehensive and exclusive, is said to be insuperable. (Citing 18 L. R. A., N. S. 967.)

Chancellor Kent defined partnership:

> As a contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them in lawful commerce or business, and divide the profits and bear the losses in certain proportions.

Discussing the definition of Chancellor Kent, it is said:

> It should be noted, however, that whether the association requires that one or more of the partners shall contribute labor or skill, or something else, is a question which may be considered as subsidiary, and for this reason the definition of Chancellor Kent has been criticised. (Citing a number of cases.)

Quoting further, page 801:

> Furthermore, while a partnership is frequently referred to as a contract, it is rather the result of a contract, or to speak precisely, a relation or status somewhat as marriage is a relation or status. A definition which avoids these

possible criticisms of the language of Chancellor Kent is formed in the provisions of the Civil Codes of certain states, which provide that a partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them.

See California Statutes, section 2395.

Under the above statutory definition, the status of partnership could be legally created between or among two or more persons, even though strangers as between themselves, regardless of contribution on the part of one member or any other factor, save the one of distribution of profits and losses (waiving the question of consideration, which no outsider would have a right to raise). The internal operations and relations are subjects purely of contract among themselves, which no outsider has a right to challenge.

The Supreme Court of Indiana, in the case of *Campbell* v. *Pence*, 118 Ind., 313; 20 N. E. 840, quotes, with approval, the following excerpt from the case of *Bromley* v. *Elliot*, 38 N. H. 287:

It [a partnership] may as well exist between factors and brokers, or agents, whose sole employment relates to the property and business of third persons, as among those who jointly own the property in which they deal. There can be no valid reason why in such the ownership of the goods in which a partnership deals should not belong to one of the partners exclusively, just as well as it might to a stranger, without any way affecting the validity of the partnership. The essence of the contract is that they should be jointly concerned in the profits and loss, or in profits only, in some honest and lawful business, the relation of partners being established by the fact that they share the profits between them.

SIEFKIN concurs in the dissent.