KAMM AND SCHELLINGER COMPANY *v.* LIKES ET AL.

[No. 14,375. Filed December 18, 1931.]

*James L. Murray* and *Frank Peregrine,* for appellant.
*Floyd O. Jellison* and *Luther Lane,* for appellees.

LOCKYEAR, J.—This is an action brought before the Industrial Board by the widow, Dollie Likes, and children of Alfred Likes, against the "Kamm and Schellinger Company" and Omer F. Taylor, for compensation for the death of their husband and father, which was alleged to have been due to an injury arising out of and in the course of his employment by the defendants.

The Kamm and Schellinger Company is a beverage manufacturer located in the city of Mishawaka, and, upon being solicited by Omer F. Taylor, who, at the time, was with his son Albert Taylor and the deceased Alfred Likes, entered into a verbal contract for the repair of the top of a tall brick smokestack, which was upon the property of the appellant but not being used by the appellant. The top of the stack was beginning to crumble, and, by the contract, the loose bricks were to be taken down and the smokestack capped with cement. On the first morning of the work, Alfred Likes and Albert Taylor fell from the top, and Likes was killed. Appellees, Mrs. Likes and her three children, filed an application with the Industrial Board wherein it was contended that Omer F. Taylor was an independent contractor and had contracted with the Kamm and Schellinger Company to do such work and that Albert F. Taylor and Alfred Likes were employees of Omer F. Taylor, and, because Omer F. Taylor was not financially responsible, under the provisions of the Indiana Workmen's Compensation Act, the Kamm and Schellinger Company should be liable to such appellees for compensation on account of the death of Alfred Likes.

Appellant defended the claim upon the grounds that the three men, Omer F. Taylor, Albert Taylor and Alfred Likes, were operating as a partnership and attempted to perform such work in that capacity.

The Industrial Board found that the relationship between Omer F. Taylor and Alfred Likes was that of employer and employee and awarded the appellees compensation at the rate of $16.50 per week for 300 weeks.

The appellant, the Kamm and Schellinger Company, says there is manifest error in the finding of facts and the award of the Industrial Board of Indiana in this cause, in that the award of the full Industrial Board of Indiana is contrary to law.

The appellant introduced no evidence, and the only testimony adduced at the trial on the question of partnership was that of Omer F. Taylor and his son, Albert Taylor.

The evidence showed that appellee Omer F. Taylor was a steeplejack and high worker. That is, he specialized in repairing, building and painting smokestacks, towers, roofs and tanks. He had been in this business for a number of years. Alfred Likes, deceased husband of appellee, Dollie Likes, was a young man and had worked upon one or two occasions for Omer F. Taylor in his usual steeplejack or high work, and was paid at the rate of $10 per day. Omer F. Taylor also had a son who worked with his father and Likes.

The evidence shows that, in June or July, 1930, Omer F. Taylor, Alfred Likes and Taylor's son, Albert Taylor, began to work together under an arrangement whereby they would divide equally the profits made in such business, and this was done for the reason that, if Omer F. Taylor worked as an independent contractor with employees, he would have to carry compensation insurance, the expense of which was prohibitive, so they agreed to

divide equally the profits, share the expense and avoid all liability for injuries.

Thereafter, they had four jobs, and, during the time they were not working on one of these four jobs, the three of them spent together soliciting business. Two of the four jobs were at Goshen, one repairing a roof on a church, and the other repairing the roof on a cream station. The contract price for the work on the cream station was only $5, this was paid after the work was completed, and that amount was divided equally among the three of them. The contract price for the work on the church was $30, and this was divided equally among the three of them. Omer F. Taylor solicited the contract for repairing the church roof, and Mr. Likes solicited the contract for repairing the creamery roof. Thereafter, they repaired some leaks in a water tank for Slick's Laundry, which they contracted to do for $15; it took them more than a week to complete this job. The other two jobs were completed in a few hours. This $15 was divided equally among the three. Thereafter, Mr. Taylor, his son and Alfred Likes stopped at the office of the appellant, the Kamm and Schellinger Company, and Omer F. Taylor went in and talked with Mr. Kamm about repairing an old unused brick smokestack on its premises, and, as a result, negotiated an agreement to do certain repairs on such smokestack for $65. Taylor then came out to the machine and told Likes and his son of the agreement, and the next day they spent at Taylor's home repairing a scaffold to use on the smokestack. This scaffold was made out of lumber furnished mainly by Alfred Likes; this scaffolding work was done on Saturday, and, the following Monday, the three went to Kamm and Schellinger's and young Taylor and Likes began to tear off the top of the chimney. Mr. Taylor went to collect for the Slick Laundry job. An hour or so after the work was begun, the scaffold broke, and

young Taylor and Likes fell to the ground and Likes was killed. In driving about the city and in looking for jobs, Omer Taylor's automobile was used and young Taylor and Likes at times helped pay for the gasoline. The understanding was that the expense of soliciting work would be divided equally among them, but it worked out that whoever had the money would pay for the gasoline.

The question before us in this case, as in all cases of this kind, is whether there is any legitimate evidence from which an inference can be drawn that Likes was an employee of Taylor, or whether the undisputed facts show that they were working under a partnership arrangement. The case of *Breinig* v. *Sparrow* (1907), 39 Ind. App. 455, 80 N. E. 37, has concisely stated the law pertaining to and defining partnerships, and, in that opinion, we find the following statement of the law and citations in support thereof: "Partnership is defined as 'the relation subsisting between two or more persons who have contracted together to share, as common owners, the profits of the business carried on by all or any of them on behalf of all of them.' Shumaker, Partnership (2d ed.) §1." See, also, *Meehan* v. *Valentine* (1892), 145 U. S. 611, 12 Sup. Ct. 972, 36 L. Ed. 835.

The intention which controls in determining the existence of a relation is the legal intention deducible from the acts of the parties. If they intend to do the things which, in law, constitute a partnership, then they are partners, although their purpose was to avoid the creation of such relation, and they have carried it to the extent of expressly stipulating that they are not to be partners. *Bradley* v. *Ely* (1900), 24 Ind. App. 2, 56 N. E. 44, 79 Am. St. 251; *Shrum, Admr.*, v. *Simpson* (1900), 155 Ind. 160, 57 N. E. 908, 49 L. R. A. 792; Shumaker, Partnership (2d ed.) 13.

The ultimate and conclusive test of a partnership is the co-ownership of the profits of the business. If there is community of profits, a partnership follows. Community of profits means a proprietorship in them as distinguished from a personal claim upon the other associate; in other words, a property right in them from the start in one associate as much as in the other. *Bradley* v. *Ely, supra.* See, also, *Macy* v. *Combs* (1860), 15 Ind. 469, 77 Am. Dec. 103; *Emmons* v. *Newman* (1871), 38 Ind. 372.

In the case of *Marion Malleable Iron Works* v. *Baldwin* (1924), 82 Ind. App. 206, 145 N. E. 599, the facts of the case are similar in many respects to the case at bar. We quote from the opinion by Remy, J., as follows: "On July 27, 1923, and for sixteen years immediately preceding that date, Thomas Baldwin, appellee herein, was a professional steeplejack. During all of that time he resided in the city of Marion, and followed his profession, in, and in the vicinity of, that city, at such times as the weather would permit. In the spring of 1923, appellee, having solicited steeplejack work of appellant, was given the job of removing two joints of a certain smokestack, and the painting of certain other smokestacks, of appellant's factory building. Appellant was to furnish the paint, and appellee the necessary tools and ladders. Nothing was said at the time as to what appellee was to receive for the work, nothing was said as to helpers in doing the work, and nothing as to when the work was to be completed. Having secured the job, appellee, as had been his custom, and without the knowledge and consent of appellant, procured Charles Meredith, another steeplejack to assist in the work, with the understanding with Meredith that the amount received for the job was to be equally divided between them and that each was to pay half of any expenses they would have." It was held in that case, that,

not only was Baldwin an independent contractor, but that he and Meredith were partners, and the award of the Industrial Board granting compensation was reversed. The uncontradicted evidence in this case leads to the inevitable conclusion that this work was done under and by virtue of the partnership arrangement above stated.

Omer F. Taylor testified: "The three of us went around looking for jobs for three months and we stopped at from 50 to 75 places. These four jobs were the result of our efforts and, outside of these four jobs, the three of us spent substantially all of our time looking for work. We would go out two or three days a week cruising around and, as near as we could, we divided the expense of the gasoline, and it was the understanding that each would pay one-third of the cost of looking for jobs."

Suppose they had been cruising around in a whale boat and had caught a whale. Would they have been partners in the expedition? The question almost answers itself. There is no legitimate evidence or any reasonable inference from which it can be said there was anything other than the relation of partnership. The three went out together hunting for jobs, sharing the expense of buying gasoline. The receipts were divided equally. Likes, the deceased, closed the deal for one job. Taylor for three. On the job in question, Taylor testified: "We had previously mentioned we would take the job for $65." As soon as Taylor came from the office of the appellants, he announced to Likes and his son in the car that the contract was $65. The next day, Saturday, a scaffold was constructed, mainly from lumber secured from the basement of Likes's house. All three took the lumber from the premises of Likes to the home of Omer F. Taylor.

Omer F. Taylor testified: "By making myself clear

on insurance, I mean, having a *silent partner*, and being a partnership, because a contractor could take insurance and cover himself." He says he does "not know if they were actually my partners, but I got one-third of the money and I have had quite a few people in with me like that, that I have split with."

The appellee contends that Taylor directed the work (speaking of making the scaffold). Taylor testified that: "Nobody bossed. We all worked on it. We all three knew how to make it and had it done before, but we had never made any before. Before, we had a carpenter make them, but we knew how they went up. I understood that if I went in with another man on a job of this kind that I would need no insurance." He was right on that assumption, for *going in with a man,* as was done in this case, was entering into a partnership relation with that man.

Likes made suggestions as to where jobs might be secured. It is argued that Omer F. Taylor testified that he could have told his son to take his hat and coat and go home, meaning that he had the right to discharge him and "if this accident had not happened, I could have gone ahead and gotten another job and done the work myself or taken my son without Likes or taken Likes without my son.

"On the Kamm and Schellinger job I could have left Likes out of the employment if I wanted to or I could have taken Likes on and left my son out." All of which we say amounts to no more than an opinion on the law of the case. He was partly right and partly wrong. He did not do any of the things he said he could have done. He could have done some or perhaps all of these things, but we are not called upon to decide what his liability would have been, had he done the things which he says he could have done. What was done is the question.

An examination of the record also shows there is no proper evidence upon which the Industrial Board could find the average weekly wage of the deceased, and, having come to the conclusion that Likes was a partner of Omer F. Taylor, and, therefore, an independent contractor, the award is reversed.